**Bobby Jack McDONOUGH,**
**Plaintiff–Respondent,**

v.

**Susan Marie McDONOUGH,**
**Defendant–Appellant.**

No. 54099.

Missouri Court of Appeals,
Eastern District,
Southern Division.

Dec. 20, 1988.

Tom K. O'Loughlin II, Cape Girardeau, for defendant-appellant.

David G. Beeson, Jackson, for plaintiff-respondent.

PUDLOWSKI, Chief Judge.

This is an appeal from a decree of dissolution of the marriage of respondent, Bobby Jack McDonough, and appellant, Susan Marie McDonough, entered on November 25, 1987, by the Honorable Marybelle Mueller, Associate Circuit Judge of the Circuit Court of Cape Girardeau County, Missouri.

At the time of the dissolution hearing, respondent was the president of McDonough Motors, Inc. and appellant was the secretary. Respondent had entered into an agreement to purchase the Toyota dealership in Cape Girardeau shortly before his marriage to appellant on June 25, 1983.

Respondent subsequently closed the sale for the dealership in August of 1983. Respondent put $125,000.00 cash into the corporation and paid an additional $50,000.00 as a down payment for the real estate the dealership was to be located on. Respondent initially took title to the real estate individually but subsequently placed the real estate title in appellant's name also. At the time of trial respondent owed approximately $340,000.00 for the real estate. Additionally, Boatman's Bank held a promissory note signed by both respondent and appellant to secure the debt on the real estate.

Respondent set up the Toyota dealership as a corporation known as McDonough Motors, Inc. At the time of incorporation no shares of stock were issued. Initially all of the corporate stock was to be issued to respondent. However, due to an accounting oversight those shares were never issued. The shares were eventually issued in 1985 to both respondent and appellant as per the respondent's wishes. Respondent received 2,550 shares of stock and appellant received 2,450 shares of stock for which she paid no consideration. Respondent claimed that he did not intend the issuance of the stock to appellant to be a gift but rather as an attempt to lessen any future estate taxes and as a method to ensure appellant's retention of the Toyota dealership in the event respondent died.

During their approximately four year marriage respondent and appellant enjoyed a very high standard of living. Both drove new cars and they lived in a home which contained five bedrooms, two and a half baths and a swimming pool. The couple spent approximately $35,000 remodeling the home during their marriage. The couple also took numerous trips during the marriage including trips to: Lake Tahoe; twice to Hawaii; Fort Worth, Texas; Washington D.C.; Palm Springs; Italy; San Francisco; Houston; New Orleans and Japan. In addition, the couple took numerous fishing trips to Kentucky Lake, Lake Montauk, Illinois and Mississippi. They

also purchased a Pace Arrow Camper for $44,000 and a fishing boat.

Respondent eventually realized that this type of lifestyle was ruining the couple financially as well as bankrupting the business. In order to correct the financial problems, respondent placed appellant on a strict monthly budget of $1,600.00 for personal and household expenses.

The couple separated in March, 1987 due to the couple's inability to communicate. Appellant moved to Florida and found employment shortly thereafter. Respondent moved out of the family home and into an apartment in Cape Girardeau.

Appellant's first point on appeal is that the trial court erred in finding that 2,450 shares of stock in McDonough Motors, Inc. issued in the name of appellant were marital property and in setting those aside to respondent, because the shares were a gift to appellant and must be set aside as separate property.

Section 452.330 RSMo (1986) provides that "[p]roperty acquired by gift, bequest, devise, or descent" does not constitute marital property. The issue before this court is whether the transfer of the stock to appellant was a valid gift of respondent's separate property to appellant's separate property when respondent did not intend the transfer of the shares to be a gift.

■ Whether or not there is a valid inter vivos gift is a question of fact. *Cochenour v. Cochenour*, 642 S.W.2d 402 (Mo.App.1982). The essential elements for a valid inter vivos gift are (1) a present intention to make a gift on the part of the donor, (2) a delivery of the property by donor to donee, and (3) an acceptance by donee, whose ownership takes effect immediately and absolutely. *Wantuck v. United Savings and Loan Association*, 461 S.W.2d 692, 694 (Mo. banc 1971); *In re Estate of Piper*, 676 S.W.2d 897, 899 (Mo. App.1984). For there to be a valid inter vivos gift of corporate shares, the owner of the shares need only transfer to the donee the shares on the records of the corpora-

tion and issue new certificates in the name of the donee. *Dildy v. Dildy*, 650 S.W.2d 324, 328 (Mo.App.1983) (*citing Firestone v. Yoffie*, 494 S.W.2d 394 (Mo.App.1973). In the case at bar, the record indicates that respondent had the share certificates issued solely in the name of appellant and that this transaction was properly entered on the corporate records. At the time these transactions occurred there was a transfer of the stock to appellant's separate property. Respondent intended the transfer to be in that form. There was no misunderstanding or mistake. Respondent contends that we should look to his motive in determining whether this was a gift to be marital property or the separate property of appellant. We can not agree. Although the record indicates that respondent was motivated by estate-planning and business purposes, not expressly to make a gift to the separate property of appellant, the law is clear that the transaction made was a gift to the separate property of the appellant. *Id.* Therefore, we reverse that part of the trial court's opinion which set aside the 2,450 shares of stock issued in the name of appellant to respondent and find them to be the separate property of appellant.

■ Appellant also contends that the trial court erred in failing to award her maintenance because the trial court set aside virtually all of the marital property to respondent. Section 452.330 RSMo (1986) provides that in dividing property in a dissolution action the trial court should divide the property as it deems just considering all relevant factors including: (1) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker; (2) The value of the property set apart to each spouse; (3) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children; and (4) The conduct of the

parties during the marriage. Moreover, a disparity in the value of marital property awarded to each spouse is justified if any of the relevant factors of Section 452.330.1 justify an unequal distribution. *In re Marriage of Dildy*, 737 S.W.2d 756 (Mo.App. 1987). In the present case, the record clearly indicates that the trial court carefully weighed each of the factors. All of the marital property respondent received was purchased entirely from his separate property with appellant contributing nothing to the purchase of these items. Further, the trial court abundantly provided for appellant in the property distribution. Appellant received almost all of the other marital property which had not been purchased by respondent's separate funds. We can find no abuse of discretion in its distribution of the couple's marital property. *Falvey v. Falvey*, 727 S.W.2d 459 (Mo.App.1987).

Appellant argues that because respondent continued to earn $7,500.00 in salary per month from the corporation and at the time of the dissolution appellant was making $6.00 per hour as a secretary she is entitled to maintenance. In determining the amount of maintenance to award the trial court must consider all relevant factors not just those set out in Section 452.335. *Toomey v. Toomey*, 636 S.W.2d 313 (Mo. banc 1982) *cert. denied* 459 U.S. 1106, 103 S.Ct. 730, 74 L.Ed.2d 955 (1983). Section 452.335 provides that the trial court should consider the earning capacity of the spouse seeking maintenance and the division of property in order to determine the reasonable needs of the spouse seeking maintenance. *See Brueggemann v. Brueggemann*, 551 S.W.2d 853, 857 (Mo.App. 1977). Moreover, where the trial court determines that the spouse seeking maintenance is capable of self support a denial of maintenance is not error. *Rickard v. Rickard*, 691 S.W.2d 391 (Mo.App.1985). Appellant testified that she has a degree as a certified executive housekeeper and earned between $24,000.00 and $27,000.00 per year prior to her marriage. Taking into account the division of property, including the 2,450 shares of stock and her income potential, there was sufficient evidence to determine appellant is capable of self-support. The trial court did not abuse its discretion in denying an award of maintenance.

The judgment of the trial court is affirmed in part and remanded to the trial court to enter a judgment consistent with this opinion.

DOWD and KAROHL, JJ., concur.