In re the MARRIAGE OF JOHNSON.

**Johnny W. JOHNSON, Petitioner–Appellant,**

v.

**Peggy Louise JOHNSON, Respondent–Respondent.**

No. 18247.

Missouri Court of Appeals,
Southern District,
Division One.

July 8, 1993.

C. Ronald Baird, Mark J. Millsap, Dorr, Baird and Lightner, Springfield, for petitioner-appellant.

Warren S. Stafford, Taylor, Stafford, Woody, Cowherd & Clithero, Springfield, for respondent-respondent.

SHRUM, Judge.

This is a dissolution of marriage case. Johnny W. Johnson appeals from those portions of a dissolution decree that awarded maintenance to Peggy Louise Johnson and classified 142 shares of corporation stock as marital property.

We affirm in part and reverse and remand in part.

## FACTS

Johnny and Peggy,[1] ages 48 and 47 respectively at the time of trial, were married February 16, 1966. Their marriage was dissolved June 4, 1992, following a separation that began in March 1990. No children were born of the marriage.

Since 1962 Johnny has worked for Springfield Brake Company, a privately owned corporation of which he is now part owner. He is president and general manager of that firm, serves on its board of directors, and runs its daily operations. The business specializes in brakes, particularly for the trucking industry, and has a service shop and a parts department.

As characterized by the trial judge, one of the larger disputes is centered around Johnny's ownership interest in Springfield Brake. The two owners of that company at the time of trial were Frank Ellis, the majority stockholder, and Johnny. It was uncontroverted that Johnny owned 147 shares in the company. The dispute arose, however, as to how many of the 147 shares were given to Johnny as gifts from other shareholders and, for that reason, should have been classified as nonmarital property.

When Springfield Brake was organized in early 1940, the company was owned by Herb Johnson, Johnny's father, and another family member. By the mid–1950's the stock of Springfield Brake was owned by Frank Ellis, his brother John Ellis, and Herb Johnson. In March 1969 the corporation and its shareholders entered into a buy-sell agreement which provided that upon the death of a shareholder the corporation had an obligation to buy the deceased shareholder's stock from his estate. The stock price was to be determined by a formula described in the agreement.

In 1984 Herb Johnson died. A second shareholder, John Ellis, died in 1990. Pursuant to the contract, Springfield Brake bought the stock of each deceased shareholder. At the time of trial the corporation still owed the Herb Johnson and John Ellis estates part of the stock purchase price, approximately $250,000 and $500,000, respectively.

Frank Ellis testified during the dissolution proceeding that he and his deceased brother, John Ellis, for a number of years gave shares of stock in Springfield Brake to Johnny because they liked him. According to Frank, "He was like more family than anything." Additional reasons ascribed by Frank for the gifts were that "[Johnny was] a good employee and [we] wanted to involve him in the company." Keeping Johnny involved in the company afforded the Ellis family "a way to get money out of the company." However, Frank was unable to recall exactly how many shares he and his brother had given Johnny.

Scott Roberts, who had been an accountant for Springfield Brake since 1978 and who also had prepared individual tax returns for Frank and John Ellis, testified concerning the gifts of corporate stock given to Johnny by the Ellises. The Ellis brothers told Roberts they wanted to give Johnny shares of stock, but they limited the amount of such gifts to stay within the annual Internal Revenue Code gift tax exclusion. Stock transfers to Johnny began in 1985 and continued through 1991.

The number of shares transferred by the Ellis brothers each year was obtained by completing an annual evaluation of the Springfield Brake stock, using a formula in the shareholder's buy-sell agreement. The per share value derived from the formula was then divided into the annual gift tax exclusion. The resulting number of shares was transferred to Johnny.

By examining the annual personal income tax returns of Frank and John Ellis and by examining the corporate records of stock transfers, Roberts determined that

---

1. For brevity and clarity, while meaning no disrespect, we refer to the parties by their first names.

between July 1, 1985, and June 30, 1991, the Ellis brothers had given Johnny 31.6 shares of stock. In addition to the stock given to Johnny by the Ellis brothers, Johnny purchased some stock from them with money he received in the form of annual bonuses from the corporation. According to Johnny, an additional 5 shares were acquired by gift from his father.

By its decree the trial court classified 142 of Johnny's 147 shares of stock in Springfield Brake as marital property and awarded those to Johnny. The remaining five shares were classified as nonmarital property and set apart to Johnny. The 142 shares were valued at $642,221.98. Other marital property awarded to Johnny was valued at $126,297.32.

The court awarded Peggy marital property valued at $279,472.42. Her property included the family residence valued at $65,000 and a duplex valued at $125,000, both of which were unencumbered, as well as a $49,334.46 certificate of deposit against which there was a loan of $4,072.76. Other marital property awarded to Peggy was a checking account, a motor vehicle, insurance policies, and household furniture.

To equalize the distribution of marital property, the trial court ordered Johnny to pay Peggy the sum of $238,000, either in cash or by paying $23,800 in cash within 30 days of the decree and the balance in yearly installments of $23,800, plus interest at "the legal rate ... provided by law." In addition, spousal maintenance of $600 per month was ordered to be paid by Johnny to Peggy.

## STANDARD OF REVIEW

■ Appellate review of a court-tried case is governed by the principles enunciated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *See Mistler v. Mistler*, 816 S.W.2d 241, 245[1] (Mo.App.1991). Thus we must affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32[1].

## DISCUSSION AND DECISION

Johnny raises two points on appeal. Because our decision on his second point controls the resolution of his first claim of error, we address his points in reverse order.

In his second point Johnny complains that the trial court erred in classifying 142 of his shares in Springfield Brake as marital property. He argues that the uncontroverted evidence shows: (1) at least 31.6 of the 142 shares of stock were gifts made to him alone, (2) the gifted shares have always been titled solely in his name, and (3) being gifts, the 31.6 shares are nonmarital property pursuant to § 452.330.2, RSMo Supp.1988, and should be set over to him.

■ The general rule in Missouri when dividing property by dissolution proceeding is that property acquired by either spouse during the marriage is classified as marital. § 452.330.2, RSMo Supp.1988.[2] This statutory presumption may be overcome by showing that the property was acquired by one of the methods excepted by the statute. § 452.330.3, RSMo Supp.1988.[3]

■ The party attacking this presumption has the burden of showing the property claimed to be separate and nonmarital falls within one of the enumerated exceptions. *In re Marriage of Reed*, 762 S.W.2d

2. In pertinent part § 452.330.2 states: "For purposes of sections 452.300 to 452.415 only, *"marital property"* means all property acquired by either spouse subsequent to the marriage except: (1) Property acquired by gift...."

3. § 452.330.3 provides: "All property acquired by either spouse subsequent to the marriage and prior to a decree of ... dissolution of marriage is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of coownership.... The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2...."

78, 81 (Mo.App.1988). Although § 452.330 does not indicate the degree of proof required to overcome the "presumption," the statutory presumption must be rebutted by clear and convincing evidence. *Id.* at 81[1].

After a two day hearing, the trial court in the case at bar said the following in its decree about the 31.6 shares which Johnny claims are nonmarital:

> [T]he corporation's accountant, Scott Roberts, testified that he had checked the records and that the other stockholders, Frank Ellis and John Ellis, now deceased, had gifted to petitioner 31.6 shares of stock but Frank Ellis also testified that the stock had been given to Mr. Ellis [presumably Johnny] *to compensate petitioner [hereafter "Johnny"] and keep him there to run the company and that by so doing instead of giving [Johnny] a bonus, this left more capital in the company for operating capital.* The court also finds that the only evidence of these gifts were conclusional statements of [Johnny], Mr. Ellis and Scott Roberts, and that petitioner failed to rebut the presumption of marital property with clear and convincing evidence. Therefore the court finds that 142 of the 147 shares of common stock which [Johnny] holds in Springfield Brake are marital property. The other five (5) shares were a gift from petitioner's father and are non-marital property. (Emphasis ours.)

Obviously the trial court relied heavily upon the testimony of Frank Ellis, the majority shareholder in Springfield Brake, in refusing to classify the allegedly "gifted" 31.6 shares of stock as nonmarital property. His testimony, in pertinent part, was as follows:

Q. (to Frank Ellis) Do you know how [Johnny] acquired his stock in Springfield Brake?

A. He bought some, and my brother and I gave him some.

Q. And what was the reason that you gave [Johnny] stock?

A. Well, we liked him. He was like more family than anything.

Q. When you gave Mr. Johnson stock, did you give that stock to Mr. Johnson individually?

A. Yes.

Q. Did you ever intend that stock be given to [Johnny] and his wife jointly.

A. No.

Q. How does [Johnny] currently hold the stock? In what name does he hold the shares of stock that he has in Springfield Brake?

A. Johnny Johnson.

Q. You said that Mr. Johnson had acquired stock by both gift and purchase?

A. Yes.

Q. And you said that he—you and your brother have given him shares of stock?

A. Yes.

Q. Do you remember how much or how many shares of stock you've given Johnny Johnson?

A. No, I don't.

Q. Do you remember anything about giving [Johnny] shares of stock?

A. Only one instance that I know definitely, that July of last year gave—I gave him four shares.

Q. Do you remember, did you give Mr. Johnson shares on a yearly basis?

A. Yes.

. . . .

Q. Do you know how many shares your brother would give him on a yearly basis?

A. The same as I would.

Pertinent cross-examination testimony of Frank Ellis was as follows:

Q. You kind of depend on [Johnny] to run the company from day to day; don't you?

. . . .

A.  Yes.

Q.  He's a pretty good employee?

A.  Yes.

Q.  That's—You gave him some stock?

A.  Yes.

Q.  Because he's a good employee and you wanted to involve him in the company?

A.  Yes.

Q.  And, also, it gave you a way to get money out of the company?

A.  Yes.

We have carefully and repeatedly read the testimony of Frank Ellis without finding where he testified that the "gifted" stock was *"to compensate"* Johnny, or where Frank testified that he and his brother gave the stock *"instead of giving [Johnny] a bonus,"* thereby leaving *"more capital in the company for operating capital."* Furthermore, we find no evidence from which these findings could be reasonably inferred. Instead, we find clear and convincing evidence that the Ellis brothers transferred to Johnny shares of stock as gifts.

Johnny was an employee of Springfield Brake and not an employee of Frank and John Ellis. His compensation and bonuses came from Springfield Brake, not from the Ellis brothers. The Ellis brothers had no duty to compensate Johnny or give him bonuses; nor did Johnny have a right to expect compensation or bonuses from them. This evidence contradicts the trial court's classification of the disputed shares as marital property and shows the stock transfers were intended as gifts.

■  The marital property disposition statute, § 452.330, does not establish a category of gift separate from the common law inter vivos gift. *See McDonough v. McDonough,* 762 S.W.2d 827, 829 (Mo.App. 1988). The essential elements for a valid inter vivos gift are (1) a present intention to make a gift on the part of the donor, (2) a delivery of the property by donor to donee, and (3) an acceptance by donee, whose ownership takes effect immediately and absolutely. *Id.* at 829[1]. "For there to be a valid inter vivos gift of corporate shares, the owner of the shares need only transfer to the donee the shares on the records of the corporation and issue new certificates in the name of the donee." *Id.* at 829.

■  By transferring the stock to Johnny and having the corporation record the transfer and issue certificates in his name alone, the Ellis brothers satisfied the requirements of a valid inter vivos gift of corporate stock. Our conclusion is based upon the uncontradicted evidence from Frank Ellis and Scott Roberts that 31.6 shares of stock were fully transferred to Johnny by Frank and John Ellis as gifts, and the absence of any evidence that the 31.6 shares were compensation or a bonus for Johnny from the corporation. Based on this evidence, the law is clear that the transfers of those shares were gifts to Johnny. *See McDonough,* 762 S.W.2d at 829.

This conclusion is not to say the Ellis brothers did not have a motive for giving Johnny stock in the corporation. Clearly, under the stock buy-sell arrangement, each shareholder and his estate stood to benefit from maintaining a successful business. By keeping a "good" younger employee "involved" in the management of the company, older shareholders were assured of a better chance that the corporation would fulfill its obligation to their estates.

■  Although it is a reasonable inference from the evidence that Frank and John Ellis may have had a motive for giving stock to Johnny, their "motive" does not transmute their donative intent into "compensation" or a "bonus." Section 452.330 does not contemplate that after a gift has been made, a trial court should then look to the donor's motive in determining whether it was a gift to be marital property or the separate property of the

donee. *McDonough,* 762 S.W.2d 827, 829 (Mo.App.1988). When the issue is classification under § 452.330 of property allegedly acquired by gift, whether or not there was a valid inter vivos gift is a question of fact. *Id.* See *Cochenour v. Cochenour,* 642 S.W.2d 402 (Mo.App.1982).

We conclude that the trial court erred in classifying as marital property the 31.6 shares of Springfield Brake stock gifted to Johnny. Although the marital property presumption supports the trial court's classification, the evidence offered by Johnny through Roberts and Ellis was more than conclusory statements, and that evidence rebuts by clear and convincing evidence the presumption that the disputed shares were marital property.

We reverse the portions of the trial court's decree classifying the 142 shares of Springfield Brake stock as marital property and awarding them to Johnny. We remand with directions to the trial court that it classify 110.4 shares of Springfield Brake stock as marital property and divide them and that it set aside to Johnny 36.6 shares [4] of stock as his nonmarital property. Necessarily, we reverse the part of the decree in which the trial court ordered Johnny to pay Peggy "$238,000 to balance out [the] equities" and remand for a redetermination of the equalization payment amount, which is dependent upon the trial court's distribution of the 110.4 shares of marital stock.

■■■■ Having reversed, in part, the marital property classification and division, we cannot adjudicate Johnny's first point, which alleges that the trial court erred by awarding Peggy $600 per month as maintenance. Before maintenance may be awarded to a spouse under § 452.335.1, RSMo Supp.1988, it must be determined that such

spouse lacks sufficient property, including marital property apportioned to that party, to provide for his or her reasonable needs. Until the marital property division is made, the determination of Peggy's need required by § 452.335.1 cannot be made. We therefore reverse and remand the provisions of the decree that award Peggy maintenance.

■■■■ If it is determined that the circumstances recited in § 452.335.1, RSMo Supp.1988,[5] exist so as to entitle Peggy to a maintenance award, then in setting the amount the trial court must consider Peggy's ability to meet her needs independently. *See* § 452.335.2(2), RSMo Supp.1988. This does not mean that Peggy must consume her share of the marital property before being entitled to maintenance, *Kinder v. Kinder,* 777 S.W.2d 339, 342 (Mo.App.1989), but it does require the trial court to consider the reasonable expectation of investment income when determining an appropriate maintenance award. *Id.* at 342. A trial court commits error in failing to consider investment income in determining whether or not a spouse is deserving of maintenance. *Id.* at 342.

To summarize, on remand the trial court shall (1) set aside to Johnny 36.6 shares of Springfield Brake stock, (2) divide between Johnny and Peggy 110.4 shares of stock, (3) determine the amount, if any, Johnny will have to pay Peggy to "balance out the equities" after the trial court has determined how the marital stock is to be divided, (4) determine how such payment, if any, is to be made, and (5) determine the amount of maintenance for Peggy, if any. The trial court shall make whatever adjustments are necessary to credit Johnny for payments he has made under the original decree. *See In re Marriage of Parker,* 762 S.W.2d 506, 516 (Mo.App.1988).

---

**4.** This figure includes 31.6 shares Johnny received as gifts from the Ellis brothers and five shares he received from his father.

**5.** In pertinent part, § 452.335 reads:
   "1. In a proceeding for ... dissolution of marriage ... the court may grant a maintenance order ... only if it finds that the spouse seeking maintenance:

   (1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and
   (2) Is unable to support himself through appropriate employment...."

Because no error is assigned in this appeal regarding the remaining provisions of the June 4, 1992, judgment, those provisions are affirmed.

PARRISH, C.J., and CROW, P.J., concur.