Karla K. HOMAN, Appellant,

v.

Wes S. HOMAN, Respondent.

No. WD 59577.

Missouri Court of Appeals,
Western District.

Nov. 5, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Dec. 24, 2002.

Application for Transfer Denied
Jan. 28, 2003.

Ronald K. Barker, Kansas City, MO, for
Appellant.

John J. Hager, Kansas City, MO, for
Respondent.

Before: HOWARD, P.J., and
BRECKENRIDGE and NEWTON, JJ.

VICTOR C. HOWARD, Presiding Judge.

Karla K. Homan appeals from the trial court's judgment in a dissolution of marriage action. Karla[1] raises two points on appeal. She contends that the trial court erred in finding that her former husband, Wes S. Homan's partnership interest in the T & W Steel Company partnership ("partnership interest") is nonmarital property because 1) substantially all of Wes's partnership interest was acquired by Wes during the term of the marriage, and property acquired during the term of the marriage is marital property; and 2) the evidence in the case was that all of the profits generated by Wes's partnership interest prior to the marriage were reinvested in the partnership to acquire real estate during the term of the marriage, thereby making Wes's partnership interest in the profits and real estate marital property.

We affirm in part and reverse in part.

### Facts

This is an action for dissolution of marriage. The facts are largely undisputed. Appellant Karla K. Homan and Respondent Wes S. Homan were married on June 29, 1985. There were three children born of the marriage: Aimee Homan, born September 18, 1987; Derrick Homan, born February 13, 1992; and Kyle Homan, born April 8, 1996. Karla and Wes separated on or about October 26, 1996. The Petition for Dissolution of Marriage was filed on October 30, 1996. The minor children have resided with Karla since the separation.

At the heart of this dispute is the characterization of a capital account in a partnership. Does it exist? Does it have value? If so, is it marital property? In essence, this case involves various family members associated in various ways with a partnership, a corporation, and three separate tracts of land. T & W Steel Co. ("the partnership") was organized in 1982 by Bill Homan, Wes's father, to enable him and his son Terry to engage in the steel fabrication business. The partners were Bill, his wife Faye, and their son Terry. The next year, upon the advice of his accountant, Bill incorporated the business as Homan & Sons, ("the corporation"), although it continued to operate under the fictitious name of T & W Steel. Bill has always owned 100 percent of the stock of the corporation.

Throughout the years, the business was operated on three tracts of land, all purchased with the funds of Bill and Faye. In 1982, the property at 6 Industrial Drive in Lee's Summit, Missouri, was acquired and later that year the lot next door was purchased. About a year later, property at 1612 Jefferson was acquired. All three properties were titled in the names of Bill, Faye, and Terry as joint tenants. When Terry died in 1986, Bill and Faye became the sole owners of all three tracts. In 1997, the Industrial Drive property was sold, and the business is now operated solely at the Jefferson location.

John Jensen, the accountant for the partnership and the corporation until 1994, testified that in 1983, the two entities were divided for accounting and tax purposes. The corporation constituted the steel business and operated on the three previously described tracts, which were owned by the partnership of Bill, Faye, and Terry. The corporation paid rent to the partnership for use of the facilities. This rent was the only income of the partnership.

---

1. In this opinion, we refer to some of the parties and witnesses by their first names. This is not intended as a sign of disrespect by the court, but rather as a way of differentiating several persons with the same last name.

At various times, Bill and Faye took out loans to purchase or make improvements on the business properties. For example, in 1982 they borrowed $55,000 to purchase the 6 Industrial Drive property and borrowed nearly $460,000 from UMB to improve the Jefferson property. It was the rent paid by the corporation that was used to pay off these notes.

Tommy Palmer, who did accounting for both entities, explained that the purpose of the partnership was to make sure that in case something happened to the corporation, the real properties would be free and clear. For example, if the corporation went into "bankruptcy or something," Faye and Bill would still own the properties. He described the arrangement between the partnership and the corporation as a way to run the money from the corporation to the partnership as rent. Then the income would, on paper, be divided up between the partners so that a percentage of the income went to a lower tax bracket, i.e., those of Bill's sons. The money accumulated in the partnership and then mostly went to pay the notes on Bill and Faye's real estate. The rental rates were set by what the payments were for that year.

Bill controlled the partnership and each year advised his accountants who the partners would be and what percentage interest they would hold. Tax returns demonstrate that it was not uncommon for the partners and/or interest percentages to change annually.

Partnership tax returns were filed every year for the partnership. John Jensen prepared the tax returns from 1984 through 1994, and Tommy and Karen Palmer of ABC Tax & Bookkeeping Service have prepared the tax returns since 1995. Bill Homan was designated in those tax returns as the "tax matters partner." He understood that he was the person in charge of the tax returns for the partnership, and he signed them.

Wes was added to the partnership in 1984. The 1984 tax returns for the partnership showed that there were three partners: Bill Homan and his two sons, Wes and Terry Homan. The partnership's income was from rental income on the property at 1612 Jefferson, Lee's Summit, Missouri. At the beginning of 1984, Bill Homan had a 95 percent interest in the partnership, Wes Homan had a zero percent interest in the partnership, and Terry Homan had a five percent interest. However, by the end of 1984, Bill Homan's partnership interest decreased to ten percent, Wes Homan's interest increased to 30 percent, and Terry Homan's interest increased to 60 percent.

The 1985 tax return again shows that there were the same three partners. By the end of the tax year, Bill Homan's interest in the partnership had increased to 60 percent, and he was the only general partner. Wes and Terry Homan each held a 20 percent interest, and neither of them was reported to be a general partner. Again, all partnership income was from rental income.

Terry Homan died in 1986. The 1986 tax return shows that there were three partners. All three were reported to be general partners. However, Terry Homan's partnership interest was reduced from a 20 percent interest to zero percent. Bill Homan's partnership interest was increased from 60 percent to 80 percent. Wes Homan retained a 20 percent interest in the partnership. The partnership's income was from rental income.

In 1987, the partnership tax return shows two partners: Wes Homan and Bill Homan. Both are described as general partners. Each had a 50 percent interest in the partnership.

From 1987 to 1997, Wes retained this 50 percent interest.

On May 13, 1997, the real estate loan on the partnership property was paid off. Although UMB Bank made the loan to Bill and Faye Homan, the uncontradicted testimony at trial was that it was paid off with funds received as rent by the partnership.

The partnership tax return for 1998 shows that there were two partners, Bill Homan and Faye Homan. Both are shown as general partners, and both are reported to hold a 50 percent interest in the partnership. The Federal Employers' Identification Number remains the same as in all previous years, indicating the continuance of the same business entity and not a new entity. There is no explanation as to what became of Wes Homan's capital account in the partnership. The testimony from Bill and Wes Homan, as well as the bookkeeper for the partnership, was that no distribution was made to Wes. Nor was there any evidence offered that Wes made a gift of or sold a partnership interest to his mother. The partnership was not dissolved with the disappearance of Wes Homan as one of the general partners and the substitution of Faye Homan. Rather, it continued its business as usual, with Bill and Faye as the only partners.

All of this leads us back to the central issue. Karla contends that Wes has an ownership interest in a capital account of the partnership which, in a substantial amount, was acquired during the marriage. If so, it would be subject to division.

John Jensen, the accountant, described the capital account of the partnership as an accumulation of income less withdrawals. In other words, the rent received by the partnership less any personal withdrawals would be added to the capital accounts of the partners according to their percentage interest. As an example, if $100,000 in rents was received one year, each 50/50 partner's capital account would show $50,000 and would be carried to the next year. If $100,000 was received the next year, each capital account would then show a total of $100,000 in an accumulated amount, and so on for future years. Tax records indicated that Wes had a capital account of over $400,000 at the end of 1997. Mr. Jensen went on to explain that the capital account balances do not reflect actual cash money, only an accounting entry reflecting the cumulative rent received through the years. Individual income taxes were paid on behalf of the partners on their respective shares. The money to pay the individual taxes was withdrawn from the rent receipts. The balance was then used to pay off the previously mentioned notes on Bill and Faye's real estate (the partnership owned no real estate) or used for Bill's personal expenses. Evidence indicated that Bill treated the partnership bank account as his own personal account and considered all the money his.

Various witnesses testified about the partnership and the capital accounts. Karla Homan testified that no money was paid out of the partnership to her and Wes. Rather, Bill Homan put the money back into the business. She further testified that neither she nor Wes ever paid real estate taxes individually on the real estate used by the corporation. She testified that she believed the amount in Wes's "capital gains" account was "around $600,000" at the time of trial, which she claims was accumulated "through the partnership of the business." She indicated that Wes was a truck driver for the corporation and for most of the marriage earned about $500 a week.

Wes Homan testified that he never collected any of the money from the partnership income listed on the partnership tax return. He testified that he had never seen any of the partnership tax returns

until a few months before trial. He testified that he never had any of the money in the capital account and that it was currently a zero balance.

Tommy Palmer, the other accountant, testified that income to the partnership was divided 50/50 between Bill and Wes Homan, for tax purposes. He further stated that in 1998, Wes Homan was no longer a partner. Wes's partnership interest was transferred to Faye Homan. There was no gift of Wes's partnership interest to Faye. "Wes never did have any" money. The partnership was set up where one partner (Bill and Faye) owned all the assets and the other partner (Wes) owned nothing. He further explained that Wes's value in the partnership is nothing because "all the assets of the partnership and the liabilities are subject to Bill and Faye Homan, and Wes is not on the notes, and he's not on the deeds for the property. He's just a partner for income purposes."

James E. Mitchell testified as Karla's expert witness. Mitchell is a certified public accountant and is certified as a valuation analyst by the National Association of Certified Valuation Analysts. Mitchell testified that he prepared an analysis and valuation of Wes Homan's capital account in the partnership as of December 31, 1998. He testified that he concluded that the partnership existed for tax and accounting purposes. Mitchell explained that Wes's capital account in the partnership represented the historical value of his interest in the partnership. The capital account did not equal cash because partnership funds allocated to Wes Homan were used to either reduce partnership debt or to purchase partnership assets. He testified that "all of these amounts allocated to Wes Homan by the partnership" were not gifts. He explained that "you cannot gift an income stream from a partnership without transferring the un-derlying asset. In other words, there is no way to just give an income stream. You have to transfer some interest in the underlying assets." He testified that "the big majority" of the rental income was used to pay off the real estate loans, and 20 percent was used to pay income taxes. He testified that the fair market value of Wes's capital account as of December 31, 1998, was $666,617. He further testified that Wes is a truck driver who makes $35,000 a year.

Following a trial on the issues, the trial court made the following findings concerning Wes's partnership interest:

18. Homan & Sons Steel Corp. d/b/a T & W Steel Co. is now located at 1612 S. Jefferson, Lee's Summit, Missouri. The business was started in 1982, when Respondent's father, William K. "Bill" Homan, financed the start up of the business by another of his sons, Terry Homan. The business was incorporated in 1983.

19. At the time of the trial, Bill Homan had been the President of the corporation from the date of its incorporation; Respondent Wes Homan was its vice-president; and Faye Homan was the secretary/treasurer of the corporation.

20. T & W Steel Co. is also the name of a partnership organized in 1982 by Bill Homan and his son, Terry Homan.

21. The real property located at 6 Industrial Drive and at 1612 South Jefferson in Lee's Summit, Missouri, was titled in the named of Bill and Faye Homan and their son, Terry Homan and was held as partnership of the T & W Steel Co. family partnership originally made up of Bill Homan and his son, Terry Homan.

22. At the time of trial, Bill Homan and his wife, Faye Homan, were the title owners of the property located at 1612

South Jefferson in Lee's Summit, Missouri.

23. U.S. Partnership Tax Returns were filed every year for the T & W Steel Co. partnership. John Jensen prepared the tax returns from 1984 through 1994. Tommy and Karen Palmer of ABC Tax & Bookkeeping Service have prepared the returns since 1995. Bill Homan was designated in those tax returns as the "tax matters partner." He understood that he was the person in charge of the tax returns for the partnership, and he signed them.

24. Respondent, Wes S. Homan, and his son, Bill Homan [sic] are the partners who own T & W Steel Co. Both are described as general partners. Each owns a 50% interest in the partnership. The partnership is non-marital property belonging to Respondent, Wes S. Homan.

25. In October 1996, Petitioner Karla Homan and Respondent Wes Homan separated and a Petition for Dissolution of Marriage was filed.

26. The tax return for the T & W Steel Co. partnership for 1997, was prepared on April 2, 1998. It shows the partnership operates on a cash accounting method. There are 2 partners: Bill Homan and Respondent. Each partner holds a 50% interest in the partnership. The balance in Respondent's capital account at the end of 1997 is $418,661. This balance is a non-marital asset owned by Wes S. Homan.

27. The Respondent's ownership interest in the T & W Steel Co. partnership is $400,000.00, and is all non-marital.

This appeal follows.

**2.** Statutory references are to RSMo 2000.

## Standard of Review

In determining whether the trial court erroneously classified property as martial or nonmarital, we will sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Warner v. Warner,* 46 S.W.3d 591, 594 (Mo.App. W.D.2001). "A trial court possesses broad discretion in identifying marital property." *Beckham v. Beckham,* 41 S.W.3d 908, 911 (Mo.App. W.D.2001), quoting *Absher v. Absher,* 841 S.W.2d 293, 294 (Mo.App.1992). "When characterizations of property as marital or separate rest on an assessment of witness credibility, this court defers to the trial court's determination of that credibility." *Id.* at 911–12.

## Point I

Karla's first point on appeal is that the trial court erred in finding that Wes's partnership interest is nonmarital property because its finding is against the weight of the evidence and it erroneously applied the law in that the evidence in the case was that substantially all of Wes's partnership interest was acquired by Wes during the term of the marriage, and property acquired during the term of the marriage is marital property.

Section 452.330 [2] provides, in relevant part, as follows:

2. For purposes of sections 452.300 to 452.415 only, "marital property" means all property acquired by either spouse subsequent to the marriage except:

(1) Property acquired by gift, bequest, devise, or descent;

(2) Property acquired in exchange for property acquired prior to the marriage

or in exchange for property acquired by gift, bequest, devise, or descent;

(3) Property acquired by a spouse after a decree of legal separation;

(4) Property excluded by valid written agreement of the parties; and

(5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

3. All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation or dissolution of marriage is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2 of this section.

4. Property which would otherwise be nonmarital property shall not become marital property solely because it may have become commingled with marital property.

Under § 358.260, "[a] partner's interest in the partnership is his share of the profits and surplus, and the same is personal property."

Karla argues that 1) there was no evidence that Wes acquired his interest in the T & W Steel Co. partnership by gift; 2)

Wes failed to rebut the presumption of marital property; and 3) there was credible evidence of income earned during the marriage from separate property with a direct correlation between the amount contributed and the value of the property, i.e., all amounts earned were first placed in Wes's capital account.

Wes argues that his 30 percent partnership interest was given to him in 1984,[3] one year prior to the marriage, and his interest was increased by 20 percent by gift in 1987, for the total 50 percent partnership interest.

The court determined that Wes had a 50 percent interest in the partnership that was his nonmarital property. However, the court did not indicate by what means he acquired it.

In the context of this case, there are three ways to legally acquire property: gift, inheritance, or purchase. We find that Wes did not "acquire" his partnership interest by any of these means. Clearly, he did not acquire the interest by inheritance. Therefore, we need only discuss whether he acquired the partnership interest by gift or purchase.

█ "The marital property disposition statute, § 452.330, does not establish a category of gift separate from the common law inter vivos gift." *In re Marriage of Johnson,* 856 S.W.2d 921, 926 (Mo.App. S.D.1993). "The essential elements for a valid inter vivos gift are (1) a present intention to make a gift on the part of the donor, (2) a delivery of the property by donor to donee, and (3) an acceptance by

---

**3.** Wes claims he had a 30 percent partnership interest when he and Karla got married. Karla claims his interest was 20 percent when they got married. The 1984 partnership tax return indicates that Wes had a 30 percent interest. The 1985 tax return indicates that he had a 20 percent interest. The parties got married in June 1985. The record does not indicate when Wes's interest was decreased from 30 to 20 percent. However, the percentage of Wes's partnership interest at the time he married Karla is not relevant, as discussed under Point I.

donee, whose ownership takes effect immediately and absolutely." *Id.*

We find that there was no evidence to support a finding that Bill Homan intended to make a gift of the partnership interest to Wes Homan, or that Wes's "ownership" of the interest was absolute. To the contrary, all of the evidence indicated that the partnership interest was not intended as a gift and that his ownership was not absolute. Neither Wes Homan nor Bill Homan testified that the partnership interest was a gift. Tommy Palmer, a former accountant for the partnership and the corporation, testified that the partnership's income was divided 50/50 between Bill and Wes Homan for tax purposes. He testified that in 1998, Wes's partnership interest was transferred to Faye Homan, yet there was no gift of Wes's partnership interest to Faye. He testified that the partnership was set up where one partner (Bill Homan) owned all the assets and the other partner (Wes Homan) owned nothing. Palmer testified that Wes's value in the partnership was nothing because "all the assets of the partnership and the liabilities are subject to Bill and Faye Homan, and Wes is not on the notes, and he's not on the deed for the property. He's just a partner for income purposes." James E. Mitchell, Karla's expert, testified that he prepared an analysis and valuation of Wes's capital account in the partnership as of December 31, 1998. He concluded that the partnership existed for tax and accounting purposes. He specifically testified that "all of these amounts allocated to Wes Homan by the partnership" were not gifts. He explained that "you cannot gift an income stream from a partnership without transferring the underlying asset. In other words, there is no way to just give an income stream. You have to transfer some interest in the underlying assets."

The evidence does not indicate that there was ever a transfer of interest in any underlying asset to Wes. Bill considered the partnership account as his personal bank account. He made substantial deposits of his personal funds into the account and made significant personal purchases from the account, including vehicles and a motor home. Bill testified that Wes had no interest in the partnership only "if [he] gave it to] him on down the line as [his] son."

We agree with Karla's statement in her brief that there "is no testimonial or documentary evidence whatsoever in this case that [Wes] acquired his interest in the partnership as a gift." In fact, all of this evidence indicates that the partnership interest was not a gift.

We also find that there was no evidence to support a finding that Wes Homan purchased the partnership interest. John Jensen, a former accountant for the partnership and the corporation, testified that Wes did not contribute any capital to the partnership. There was no evidence that Wes ever contributed to the partnership or in any way paid for his "interest."

Finally, we find that there was no evidence that Wes "acquired" a partnership interest at all—before, during or after the marriage—for purposes of this case. Therefore, whether this partnership interest was marital property or separate property is a moot issue. Neither Wes nor Karla actually paid partnership taxes, they never received any money from the partnership, they never had any interest in the underlying property (it was always in Bill and Faye's names), and there is no dispute that there is no actual cash in Wes's capital account. The evidence in this case clearly indicates that the "partnership" in this case was not a true partnership, but rather a partnership only on paper, the purpose of which was to confer tax bene-

fits on Bill and Faye Homan.[4] The reality of it is that it was wholly structured for Bill and Faye's benefit and convenience and used as their personal account. For the purpose of determining whether property is marital or nonmarital and dividing such property in a dissolution of marriage action, there was no partnership interest that ever belonged to Wes, and the evidence indicated that Wes no longer owns any partnership interest. Hence, the disposition of the partnership interest does not need to be determined.

### Point II

Karla's second point on appeal is that the trial court erred in finding that all of Wes's partnership interest is nonmarital property because its finding is against the weight of the evidence and it erroneously applied the law in that the evidence in the case was that all of the profits generated by Wes's partnership interest prior to the marriage were reinvested in the partnership to acquire real estate during the term of the marriage, thereby making Wes's partnership interest in the profits and real estate marital property.

This point has been rendered moot by our disposition of Point I. Point II is denied.

The judgment of the trial court is reversed regarding its finding that Wes had a partnership interest in T & W Steel Company and is affirmed in all other respects.

BRECKENRIDGE and NEWTON, JJ., concur.

---

4. The issue of the legality or propriety of this    arrangement is not before us.