Brenda L. MORSE, Respondent,

v.

Ronald L. MORSE, Appellant.

No. WD 60144.

Missouri Court of Appeals, Western District.

July 30, 2002.

Jean Strandberg Goldstein, Columbia, MO, for appellant.

James Clampitt and Jason H. Lamb, Mexico, MO, for respondent.

Before PAUL M. SPINDEN, C.J., HAROLD L. LOWENSTEIN and ROBERT G. ULRICH, JJ.

ROBERT G. ULRICH, J.

Ronald Morse (Father) appeals the judgment of the trial court dissolving his marriage to Brenda Morse (Mother). He claims that the trial court erred in (1) ordering joint physical custody of the two minor children where the children spend alternating months with each parent, (2) ordering him to pay child support in the amount of $467 per month, (3) valuing and dividing the martial property, and (4) awarding Wife $5,200 in attorneys fees. The judgment of the trial court is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

## I. Facts

Father and Mother were married on April 11, 1986. Two children were born of the marriage: Zachary, born October 8, 1986; and Mark, born July 30, 1988.

In 1997, Mother began noticing problems in the marriage. Father was not talking to her and was "shutting [her] out." She asked Father if he was having an affair, and he replied, "Yes, sort of." Father said that he had feelings for another woman, and that although he was not having a physical affair, he was having an "emotional affair." Father testified at trial that he had been having doubts about the marriage for years and probably from the beginning. The parties stayed together for the next year. Mother encouraged Father to go to counseling, but he refused. Father threatened to kill himself if Mother left him. He was depressed, and he isolated himself from Mother and the two children. Father eventually admitted that he was romantically interested in a co-worker, and he refused to end his friendship with

her. The parties finally separated in November 1998, and Father moved out of the marital home. The children remained in the custody of Mother with Father receiving visitation on alternate weekends and one night per week.

After the separation, Mother and Father attended marriage counseling. Father told the counselor that he would continue in counseling if he could keep his girlfriend. Father testified that he began a romantic relationship with his co-worker in December 1998. Father also continued to have sexual relations with Mother after the separation. He admitted that he was sexually active with both his girlfriend and Mother during a seven-month period. Mother testified that she and Father continued to have sexual relations until February 2000 when she discovered that Father was also engaging in a sexual relationship with another woman.

Mother filed her petition for dissolution of marriage in August 1999 in Audrain County Circuit Court. The case was transferred to Boone County Circuit Court in June 2000. Thereafter, Father filed his answer and counter-petition. Both parties sought dissolution of the marriage, joint legal custody and primary physical custody of the children with visitation by the other spouse, child support from the other spouse, and division of marital property. Mother also sought attorney's fees.

At the time of trial on January 9, 2001, Mother was a full-time student and worked twenty hours per week earning $9.61 per hour. She was scheduled to graduate with an associate's degree in May 2001. Father was employed by Boone Electric Company where he has worked for thirteen and a half years. While normally employed as an electrical lineman earning $20.84 per hour, Father was performing clerical duties at the time of trial due to recent back surgery. He was scheduled to return to his normal job in the spring of 2001.

On January 16, 2001, Father filed a motion to reopen for additional evidence alleging that during an argument on January 11, 2001, Mother had pushed and shoved the boys and had slapped their elder son multiple times. A hearing was held on the motion, and the trial court took it under advisement. The court then ordered the parties and the children to attend counseling. The court also ordered temporary custody of alternating weeks to each parent.

On April 19, 2001, a report by the family's counselor was filed with the court. The counselor opined that while the weekly custody transfer was not ideal for the children, a dual-household schedule is an appropriate arrangement that would allow the children to have meaningful contact with both parents if the parties continue to live within close proximity of each other and cooperate on the frequent exchanges.

The trial court entered its judgment dissolving the parties' marriage on June 12, 2001. It awarded the parties joint legal and physical custody of the children with custody to alternate monthly between the parents. Visitation was scheduled for the parent who did not have custody in a specific month. The trial court ordered Father to pay $467 per month in child support. It also ordered Father to pay Mother's attorney's fees in the amount of $5,200. Finally, the trial court divided the marital property. Based on its finding that Father's conduct broke up the marriage, it awarded 60% of the marital property to Mother and 40% to Father. This appeal by Father followed.

## II. Standard of Review

The judgment of the trial court in a dissolution action will be affirmed on appeal unless there is no substantial evi-

dence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Taylor v. Taylor*, 25 S.W.3d 634, 638 (Mo.App. W.D.2000). Deference is given to the trial court's determinations of credibility, and the evidence and permissible inferences therefrom are viewed in the light most favorable to the decree with all contrary evidence and inferences disregarded. *Mehra v. Mehra*, 819 S.W.2d 351, 353 (Mo. banc 1991). The appellant bears the burden of demonstrating error. *Taylor*, 25 S.W.3d at 638.

### III. Child Custody and Child Support

■ The issues of child custody and child support are first addressed. Father claims that the trial court erred in ordering joint physical custody of the two minor children where the children spend alternating months with each parent. He also claims that the trial court erred in ordering him to pay child support in the amount of $467 per month.

■ Section 452.375, RSMo 2000, governs custody of children. It requires the trial court to "determine custody in accordance with the best interests of the child." § 452.375.2, RSMo 2000. In doing so, the trial court shall consider all relevant factors including:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their function as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may sig-

nificantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian.

§ 452.375.2, RSMo 2000. Section 452.375.6, RSMo 2000, provides:

If the parties have not agreed to a custodial arrangement, or the court determines such arrangement is not in the best interest of the child, the court shall include a written finding in the judgment or order based on the public policy in subsection 4 of this section and each of the factors listed in subdivisions (1) to (8) of subsection 2 of this section detailing the specific relevant factors that made a particular arrangement in the best interest of the child. If a proposed custodial arrangement is rejected by the court, the court shall include a written

finding in the judgment or order detailing the specific relevant factors resulting in the rejection of such arrangement. Thus, "[i]f written findings are required of the trial court by § 452.375.6, but are not made, the award of child custody will be reversed and the case remanded for the court to make the necessary findings and an award in accordance therewith." *Bauer v. Bauer*, 38 S.W.3d 449, 456 (Mo. App. W.D.2001).

In this case, the parties did not agree to a custodial arrangement regarding the minor children and the trial court rejected their proposed custodial plans. The trial court, therefore, was required under section 452.375.6 to make written findings in the judgment detailing the specific relevant factors that made its custody award in the best interests of the children. The trial court, however, did not make the required findings in its judgment.[1] The judgment regarding child custody and support is, therefore, reversed, and the case is remanded to the trial court to make written findings in its judgment as required by section 452.375.6 and for entry of a new child custody and support judgment as the trial court deems proper. *See Id.*

## IV. Property Division

■ Next, Father claims that the trial court erred in valuing and dividing the martial property. The most valuable assets in the marital estate were Father's 401k valued by the trial court at $52,514 and Father's pension plan, which the trial court did not value. The trial court awarded Mother $40,028 of the 401k plan and 60% of Father's entitlement under the pension plan. She also received her 1994 truck valued at $7,500. Father received $12,486 of the 401k plan, 40% of his entitlement under the pension plan, a 1966 Mustang valued at $1,200, a 1996 Mercury valued at $12,000, a 1996 camper valued at $5,000, and a vacation lot valued at $1,000. Father received marital property valued at $31,686 or 40% of the property, and Mother received marital property valued at $47,528 or 60% of the property.

■ The trial court has broad discretion in the division of property, and the division will be reversed only if it is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion. *Silcox v. Silcox*, 6 S.W.3d 899, 904–905 (Mo. banc 1999). "An abuse of discretion will be found only if the award is so arbitrary or unreasonable that it indicates indifference and lack of proper judicial consideration." *Id.* at 905 (citation omitted).

■ Father first contends that the trial court did not divide the property according to the parties' oral agreement as set forth in the record. "[O]ral agreements as to property division are binding when entered into in open court by parties represented by counsel and the agreement is 'spread upon the record.'" *Carter v.*

---

1. Father attached to his brief an appendix that includes a document entitled judgment memo dated May 10, 2001. The document appears to be a memo setting out certain findings by the trial court regarding property division, child custody, and child support and directions to the parties' counsel to draft a formal judgment in accordance with those findings. This document, however, is not contained in the record on appeal. An appellate court will not consider a document that was not included in the record on appeal.

*Denny's Inc. v. Avesta Enters., Ltd.*, 884 S.W.2d 281, 289 n. 5 (Mo.App. W.D.1994). The inclusion of a document as an appendix to a party's brief does not make it part of the record on appeal. *Id.* Furthermore, even if the document were included in the record on appeal, any findings made in the document regarding the relevant factors under section 452.375.2 would not be sufficient to satisfy the requirement of section 452.375.6. Under subsection 6, such written findings must be included in the judgment itself.

*Carter,* 869 S.W.2d 822, 829 (Mo.App. W.D. 1994). Separation agreements between spouses must be specific so that the need for recourse to further litigation is minimized and for other practical reasons. *Id.; Markwardt v. Markwardt,* 617 S.W.2d 461, 463 (Mo.App. E.D.1981); *Turpin v. Turpin,* 570 S.W.2d 831, 835 (Mo.App.1978).

The record reveals that the parties did not enter into a written agreement, nor did they enter into a binding stipulation in open court concerning the division of marital property. Both parties testified regarding the division of property they desired. Mother asked the court to award her the 1994 truck, the 1996 camper, and one-half of the 401k and pension plans. She testified regarding her desire that Father be awarded the 1996 Mercury, the 1966 Mustang, the vacation lot, and one-half of the 401k and pension plans. During Mother's testimony, Father's attorney interjected that Mother could have the Mustang and the vacation lot. Father subsequently testified that Mother could have the Mustang and vacation lot. Father also acknowledged that the 401k and pension plans were subject to division. Neither party, however, testified that they understood or agreed to a specific agreement for division of the property. No agreement between the parties existed for consideration by the trial court.

 Next, Father challenges the trial court's valuation of certain marital property. He first contends that the trial court erred in valuing the 1996 Mercury at $12,000 because the value was not supported by the evidence. The trial court enjoys broad discretion in valuing marital property. *Farley v. Farley,* 51 S.W.3d 159, 164 (Mo.App. S.D.2001). The trial court, however, is prohibited from entering a valuation of marital property not supported by the evidence at trial. *Id.* Generally, the proper date of valuation of marital property is the date of trial. *Wright v. Wright,* 1 S.W.3d 52, 57 (Mo.App. W.D. 1999).

In July 2000, approximately six months before trial, Father filed his statement of property showing the Mercury to have a net value of $12,000. At trial, Father presented the only evidence of the value of the car. He testified that the Mercury had a net value of $7,000. The trial court valued the car at $12,000 in it judgment of dissolution. The evidence at trial did not support such value. The trial court, therefore, erred in valuing the Mercury.

 Father also disputes the trial court's valuation of the 401k plan and the pension plan arguing that due to market fluctuations, the values of the plans could have changed significantly between the date of trial and the date of the dissolution judgment some six months later. As stated above, the proper date of valuation of marital property is generally the date of trial. *Id.* Section 452.330.1(1), RSMo 2000, however, mandates that the trial court consider the economic circumstances of each spouse at the time the division of property is to become effective. Thus, valuation of property should be reasonably proximate to the date the division is to be effective. *In re Marriage of Gustin,* 861 S.W.2d 639, 644 (Mo.App. W.D.1993). In a case where the date of trial is not reasonably proximate to the date of the actual distribution, the trial court should hold another hearing to establish a valuation as close to the effective date of the division as possible. *Wright,* 1 S.W.3d at 57; *Gustin,* 861 S.W.2d at 644. Such rule is especially important in a case where the assets are subject to ever changing value. *Gustin,* 861 S.W.2d at 644. "Volatile market conditions and changing economic circumstances can render assets that had been valuable months or years earlier virtually worthless in the present, and vice versa."

*Id.* at 643 (quoting *Sutliff v. Sutliff*, 518 Pa. 378, 543 A.2d 534, 537 (1988)). To distribute property without regard to such market fluctuations would be illogical. *Id.* (quoting *Sutliff*, 543 A.2d at 537).

In this case, evidence presented at the trial on January 9, 2001, revealed that the value of the 401k plan at that time was $52,514.40 and the value of the pension plan was $22,980.05. Following the hearing, the trial court took the case under advisement. Thereafter, over the next several months, Father filed three motions, and separate hearings were held on the motions. The trial court did not enter its judgment of dissolution until June 12, 2001. Thus, the effective date of distribution of the 401k and pension plans was six months after the evidence valuing the property was received. Because the value of these assets could have changed significantly over six months due to especially volatile market conditions and changing economic circumstances during the first half of 2001 and throughout the year, to order distribution of these assets six months after the last known value was illogical and thwarted the mandate of section 452.330.1(1), RSMo 2000, that the trial court consider the economic circumstances of each spouse at the time the division of property is to become effective. *See Id.* at 644 (where effective date of distribution of shares of stock was seven months after stock was valued, judgment dividing marital property was reversed, and case was remanded to receive evidence of the value of the property and to consider the economic circumstances of each spouse at the time the division of property is to become effective). Because the date of valuation of the 401k and the pension plans was not reasonably proximate to the effective date of distribution, the portion of the judgment dividing marital property is reversed. The case is remanded to the trial court to receive evidence of the value of the 401k

and pension plans and to consider the current economic circumstances of each spouse.

Finally, Father argues that the evidence did not support the court's finding that Father's conduct caused the marriage to break up. Section 452.330.1(4), RSMo 2000, requires the trial court to consider the parties' conduct during the marriage when dividing the marital property. *Nelson v. Nelson*, 25 S.W.3d 511, 519 (Mo.App. W.D.2000). Although misconduct is not a legitimate basis for "punishing" a party when dividing marital property, it is a factor in property division when the offending conduct places extra marital burdens on the other spouse. *Id.* Only when the misconduct of one spouse changes the balance so that the other must assume a greater share of the partnership endeavor can such misconduct affect the distribution of property. *McNair v. McNair*, 987 S.W.2d 4, 6–7 (Mo.App. W.D.1998)(quoting *Dodson v. Dodson*, 904 S.W.2d 3, 8 (Mo.App. W.D.1995)).

The evidence in this case showed that Father told Mother in 1997 that he was having affectionate feelings for another woman and that they were having an "emotional affair." Father further testified that he had been uncertain about the marriage from the beginning. Mother tried to have Father accompany her to counseling in an effort to repair the marriage, but he refused. Mother would threaten to leave when she became frustrated with Father's unwillingness to work on the marriage, but Father would threaten to kill himself if she did. Father also refused to end his friendship with the other woman. After a year, the parties separated and began marriage counseling. Father, however, began a sexual relationship with his girlfriend and, at the same time, continued to have sexual relations with

Mother. Father told the marriage counselor that he would continue counseling if he could keep his girlfriend. Mother also sought individual counseling as a result of Father's conduct. This evidence supported a finding by the trial court that Father's misconduct caused the marriage to break up and a conclusion that Father's conduct placed extra marital burdens on Mother. The trial court properly considered the misconduct in distributing marital property.

## V. Attorney's Fees

In the final point addressed in this appeal, Father claims that the trial court erred in awarding Mother $5,200 in attorney's fees. He asserts that Mother did not show a lack of financial resources to pay her own attorney's fees and that he prevailed on the principal issue that produced the attorney's fees, child custody, which was raised and primarily developed by him.

The trial court has considerable discretion in determining whether to award attorney's fees. *Leone v. Leone*, 917 S.W.2d 608, 616 (Mo.App. W.D.1996). The trial court is considered to be an expert in the necessity, reasonableness, and value of fees. *Id.* An award of attorney's fees will be reversed only upon a showing of an abuse of discretion. *Id.*

Section 452.355 governs the award of attorney's fees in a dissolution action. It provides:

Unless otherwise indicated, the court from time to time after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding and after entry of a final judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in the attorney's name.

§ 452.355.1, RSMo 2000. In awarding attorney's fees, the trial court should consider all relevant factors including the spouses' financial resources and their conduct during the marriage. *Bauer*, 38 S.W.3d at 457. A spouse's inability to pay is not a requirement for awarding attorney's fees. *Id.* (quoting *McNair*, 987 S.W.2d at 8). Instead, one spouse's greater ability to pay is sufficient to support an award of attorney's fees to the other spouse. *Id.* (quoting *McNair*, 987 S.W.2d at 8). Additionally, the trial court can consider any unreasonable conduct during the dissolution proceeding that may have increased the other spouse's attorney's fees. *Id.* In particular, the trial court may consider what principal issues necessitated the expenditure of fees and who raised and developed those issues. *Patton v. Patton*, 973 S.W.2d 139, 149 (Mo.App. W.D.1998); *Leone*, 917 S.W.2d at 616.

In arguing that he raised, developed and prevailed on the principal issue of the case, child custody, Father apparently believes that the trial court found that he caused the trial to be unduly protracted resulting in Mother incurring additional attorney's fees. The trial court, however, did not make such finding. It was not required to make and did not make any findings in awarding attorney's fees. *Williams v. Williams*, 55 S.W.3d 405, 418 (Mo.App. W.D.2001). Nevertheless, Father's argument is without merit. Both parties sought primary physical custody of the children and developed the

issue, and the trial court awarded joint physical custody with equal time between each parent. Additionally, the evidence revealed that Father's income is over four times the income of Mother. Father has a greater ability to pay Mother's attorney's fees. And as discussed above, the evidence indicated that Father engaged in misconduct during the marriage. Based on all relevant factors, the trial court did not abuse its discretion in awarding Mother $5,200 in attorney's fees. The point is denied.

The judgment of the trial court is affirmed in part and reversed in part, and the case is remanded to the trial court for further proceedings consistent with this opinion.

SPINDEN, C.J., and LOWENSTEIN, J., concur.