In re the **MARRIAGE OF Frank Mathew DOLENCE and Beverly Ann Dolence.**

**Frank Mathew Dolence, Petitioner–Respondent,**

v.

**Beverly Ann Dolence, Respondent–Appellant.**

**No. 27609.**

Missouri Court of Appeals, Southern District, Division Two.

Aug. 30, 2007.

---

4. Kearns' motion for attorneys' fees on appeal is denied.

Jeffrey Carl Goodnight, Springfield, MO, for appellant.

Linda Di–Anna Lott, Marshfield, MO, for respondent.

JEFFREY W. BATES, Chief Judge.

Beverly Ann Dolence (Wife) appeals from a judgment dissolving her marriage to Frank Mathew Dolence (Husband) and presents two points for decision. Wife contends the trial court erred by characterizing a Missouri farm as the separate, nonmarital property of Husband and by denying Wife maintenance. Finding no error, we affirm.

## I. Standard of Review

In this court-tried case, our review is governed by Rule 84.13(d). *In re Marriage of Denton,* 169 S.W.3d 604, 606 (Mo.App.2005).[1] We must affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).[2] On appeal, we defer to the trial

---

1. All references to rules are to the Missouri Court Rules (2007).

2. *Murphy* interpreted the provisions of former Rule 73.01(c). The provisions of that rule were transferred, in essentially the same form, to Rule 84.13(d) effective January 1, 2000.

court's credibility determinations and the weight assigned to witness testimony. *Youngberg v. Youngberg*, 194 S.W.3d 886, 889 (Mo.App.2006). "The trial court is free to believe all, none, or part of the testimony of any witness." *Id.* We view the evidence and all permissible inferences from that evidence in the light most favorable to the judgment and ignore all contrary evidence. *Mehra v. Mehra*, 819 S.W.2d 351, 353 (Mo. banc 1991); *McAllister v. McAllister*, 101 S.W.3d 287, 290 (Mo. App.2003). The foregoing principles have been utilized in summarizing the facts presented at trial.

## II. Factual and Procedural Background

Prior to the parties' marriage, Husband inherited a farm from his mother. In May 1994, Husband sold that farm and purchased a new farm in Ohio (the Ohio farm), titling it in his name alone.[3] Husband used the Ohio farm to operate a dairy.

Husband and Wife were married in Ohio on July 2, 1994. Wife had three children from a prior marriage: 14–year–old Matthew; 12–year–old Jenni; and 9–year–old Jason. Matthew lived in Colorado with his father. Jenni and Jason resided with Wife. Shortly after the parties married, Husband adopted the two younger children.

In July 1998, Jenni was shot by an unidentified assailant. In March 1999, Husband and Wife decided to sell the Ohio farm and relocate to Missouri to conceal their whereabouts from the person or persons who had harmed Jenni. It was Wife's idea to form a corporation and use the proceeds of the Ohio farm sale to

purchase real estate in Missouri. By titling the property in the corporation's name, the family's identity would be concealed. Husband agreed and put the Ohio farm up for sale.

On April 27, 1999, Husband and Wife formed a Missouri S-corporation called Rosemont, Inc. (Rosemont).[4] Each served as an incorporator of the corporation. Husband was named to be Rosemont's president, and Wife was the corporate secretary. By creating a corporation to own real estate in Missouri, Husband did not intend to make a gift to Wife, give her any ownership interest in the Ohio farm or give her any ownership interest in the corporation itself. Husband believed himself to be the sole owner of the corporation.

On June 16, 1999, Husband sold the Ohio farm to the Kiko family for $400,000. Husband did not want Wife listed as a grantor on the deed, but the buyers insisted because of the requirements of Ohio law concerning the conveyance of real property by married persons. Therefore, both Husband and Wife were named as grantors on the deed to the Kikos. The sale netted the sum of $233,911.37. The proceeds of the sale were disbursed via two checks at closing. Since Husband and Wife had signed the deed to the Kikos, each check was made jointly payable to Husband and Wife. One check in the amount of $83,911.37 was deposited into the parties' joint checking account at Farmers National Bank in Ohio. A portion of these funds was used to purchase a mobile home in which Wife's oldest son, Matthew, was to reside. The second check

---

**3.** Husband also acquired cattle and farm equipment prior to his marriage to Wife. The parties agree that these were Husband's separate, nonmarital property.

**4.** Title 26 U.S.C.A. § 1361(a)(1) (West 2002) defines an "S corporation" as a small business corporation that has made the required election pursuant to 26 U.S.C.A. § 1362(a) (West 2002).

in the amount of $150,000 was deposited into an escrow account at a title company in Marshfield, Missouri.

On June 18, 1999, Rosemont purchased a 165-acre farm in Niangua, Missouri (the Missouri farm). Title to the property was taken in Rosemont's name. The purchase price of $210,000 came from two sources. The sum of $110,000 was withdrawn from the escrow account to use as a down payment.[5] The remainder of the purchase price came from a $100,000 loan to Rosemont from Mercantile Bank. Husband and Wife signed the loan documents in their capacities as Rosemont's corporate officers. In addition, each was required to personally guarantee the loan. In May 2001, another house that generated $375 per month in rent was purchased. An additional $300 in rental income was being generated by the mobile home because Matthew no longer resided there.

For tax purposes, the income and losses of an S-corporation pass though to its shareholders. *In re Marriage of Thomas,* 199 S.W.3d 847, 864 (Mo.App.2006); § 143.471.[6] After Rosemont was incorporated, Husband and Wife neglected to formally issue any shares of stock. Rosemont did file corporate tax returns, however, from 1999 through 2004. For each tax year, the return included a schedule K–1 form that was used to determine a shareholder's share of income, credits and deductions. During all six tax years, Husband was listed as the shareholder owning 100% of Rosemont stock on the corporation's K–1 schedules.

Prior to the parties' separation in 2002, Wife helped with the farm operations. She was able to mow hay, do herd checks, feed large round bales to the cattle and milk the cows when Husband was not there. Wife had been diagnosed with fibromyalgia and high blood pressure, which she treated with medication. She also had a prolapsed bladder condition that could be surgically corrected. After the separation, Husband stayed in Missouri and operated the farm. Wife moved back to Ohio and worked as a cashier at a fruit farm. Her wages ranged from $7.50 to $9 an hour, and she worked approximately 30 hours per week. Wife's net income was approximately $900 per month, and her living expenses were approximately $1,300 per month. While the parties were separated, Wife received seven $50 checks from Husband.

In April 2003, Husband filed the instant dissolution action. In February 2004, Rosemont was administratively dissolved for failure to file its annual report. In October 2005, Rosemont was joined as a party to this proceeding. Both parties appear to have agreed that, after classifying assets titled in Rosemont's name as separate or marital property, the court could award those assets directly to Husband or Wife.[7] The case was tried in November 2005. At the time of trial, the Missouri farm was valued at $225,000 and was subject to a loan of $105,000.[8]

---

5. The remaining money in the escrow account was used to purchase additional farm equipment and cattle.

6. All references to statutes are to RSMo (2000).

7. In order for the trial court to have the authority to exercise control over Rosemont's property, the corporation had to be a party to the dissolution proceeding. *Comninellis v.*

*Comninellis,* 99 S.W.3d 502, 508 (Mo.App. 2003).

8. Wife had an accountant determine the value of Rosemont, and his report was admitted in evidence. The accountant opined that the corporation had no goodwill or going-concern value and was worth only the value of its tangible assets.

. Judgment was entered in February 2006. The trial court decided the Missouri farm was nonmarital and should be awarded to Husband as his separate property.[9] Husband was awarded marital property valued at $31,824. The marital property awarded to Wife was valued at $61,998. The award to Wife included the mobile home and the rental house, which the court determined to be marital property. The court divided the parties' debts by ordering Husband to pay the $105,000 loan on the Missouri farm and Wife to pay approximately $1,700 in medical bills. The court gave the following explanation of how it divided the parties' property:

> The non-marital property has been considered in the division of · all property and debt and the Court specifically finds that [Husband] had significantly more property (both real and personal) going into the marriage and contributed significantly more financially throughout the marriage than did [Wife]. [Wife] is receiving a larger portion of the marital property.... [T]he division of property is not necessarily intended to be equal but finds it is an equitable division of property under the circumstances.

The court awarded Wife $1,800 in temporary maintenance and gave Husband a credit of $350 for amounts already paid. The court denied Wife's request for periodic maintenance, however, because the court decided that "[Wife] is able to meet her reasonable needs through appropriate employment and by marital property awarded to her." This appeal followed.

### III. Discussion and Decision

Wife's first point challenges the trial court's determination that the Missouri farm, titled in Rosemont's name, should be awarded to Husband as his separate property. Wife contends this determination was unsupported by the evidence, against the weight of the evidence and constituted a misapplication of the law. According to Wife, the court should have found the Missouri farm to be marital property because: (1) Rosemont was incorporated after the parties married; (2) the Missouri farm was titled in Rosemont's name; and (3) the facts and circumstances show that Husband intended to gift the real estate to the marriage.

Section 452.330.1 requires the trial court to determine what property is separate and what is marital, set apart to each spouse each spouse's non-marital property, and divide the marital property as it deems just. *McAllister v. McAllister,* 101 S.W.3d 287, 293 (Mo.App.2003). Subsection 2 of § 452.330 defines "marital property" in the following way:

> "[M]arital property" means all property acquired by either spouse subsequent to the marriage except:
>
> (1) Property acquired by gift, bequest, devise, or descent;
>
> (2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;
>
> (3) Property acquired by a spouse after a decree of legal separation;
>
> (4) Property excluded by valid written agreement of the parties; and
>
> (5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

---

**9.** Husband was awarded additional nonmarital property valued at $144,353. On appeal, Wife does not challenge this aspect of the court's award.

There is a statutory presumption that all property acquired by either spouse subsequent to the marriage is marital. § 452.330.3. This presumption, however, can be overcome by showing that the property was acquired by a method listed in subsection 2. *Id.* "The identification of property as marital or separate is in the broad discretion of the trial court." *Winter v. Winter*, 167 S.W.3d 239, 243 (Mo. App.2005).

 In the case at bar, Husband claimed that the Missouri farm was non-marital property. The Missouri farm was titled in Rosemont's name, and Husband was the sole shareholder of that administratively dissolved corporation. The creation of Rosemont and Husband's acquisition of his 100% ownership interest in the corporation took place after the parties' marriage.[10] Accordingly, that ownership interest was presumptively marital in nature, even though Husband was the sole owner of the corporation. *See* § 452.330.3 (property acquired by a spouse subsequent to the marriage is presumed to be marital regardless of whether title is held by one spouse individually); *In re Marriage of Holden*, 81 S.W.3d 217, 222 (Mo.App.2002) (shares of stock acquired subsequent to the marriage are presumptively marital property). To defeat the presumption, Husband had to prove by clear and convincing evidence that he acquired his interest in the corporation pursuant to one of the methods listed in § 452.330.2. *Preston v. Preston*, 189 S.W.3d 685, 689 (Mo.App. 2006). The trial court concluded that Husband rebutted the presumption, and we do not find that conclusion to be erroneous.

 One of the statutory exceptions to the definition of marital property is "[p]roperty acquired in exchange for property acquired prior to the marriage...." § 452.330.2(2). It is undisputed that the Ohio farm was Husband's separate property because he acquired that real estate before his marriage to Wife. The parties' move to Missouri was precipitated by the shooting of their daughter. Rosemont was formed so the Ohio farm could be sold and the proceeds could be used to purchase a new farm in Missouri in a way that concealed the family's identity. By incorporating, Husband did not intend to make a gift to Wife, give her any ownership interest in the Ohio farm or give her any ownership interest in Rosemont. After the Ohio farm sold, the proceeds were disbursed in two checks. The second check, in the amount of $150,000, was deposited into an escrow account. From that account, $110,000 was withdrawn for use by Rosemont as a down payment on the Missouri farm. The remainder of the purchase price came from a corporate loan made to Rosemont. Wife presented no evidence that marital funds were used to pay off the corporate loan. *See In re Marriage of Thomas*, 199 S.W.3d 847, 863 (Mo.App.2006) (holding that a spouse's status as a corporate loan guarantor does not make the corporation's stock marital property unless marital funds were invested in the corporation or were used to pay off the debt). These facts support the conclusion that Husband acquired his ownership interest in Rosemont in exchange for his prior interest in the Ohio farm, which was Husband's separate property. "Property acquired in exchange for property ac-

---

10. The trial court concluded that the failure to issue actual stock certificates did not prevent Husband from being treated as Rosemont's sole shareholder in the dissolution action. *See, e.g., Duncan v. Kelly*, 435 S.W.2d 29, 32 (Mo.App.1968) (recognizing that a share of stock connotes a beneficial, participating ownership interest in a corporation, while a stock certificate is merely a document evidencing such ownership or interest in the corporation). On appeal, Wife does not argue otherwise.

quired before marriage is not marital property." *Sprock v. Sprock*, 882 S.W.2d 183, 186 (Mo.App.1994).

Wife argues, however, the facts and circumstances surrounding the purchase of the Missouri farm conclusively show that Husband intended to gift the real estate to the marriage and thereby transmute the farm into marital property. Under the theory of transmutation, an item of nonmarital property can be converted into marital property by gift or by a spouse's express or implied agreement. *McAllister v. McAllister*, 101 S.W.3d 287, 293 (Mo.App.2003); *Woolridge v. Woolridge*, 915 S.W.2d 372, 376 (Mo.App.1996). Thus, nonmarital property may lose its character as such if there is evidence of an intent to contribute the property to the marriage. *Cuda v. Cuda*, 906 S.W.2d 757, 759 (Mo.App.1995). We find Wife's argument unpersuasive for two reasons.

First, the issue of whether Husband intended to make a gift to Wife presented a question of fact for the trial judge to determine, based on the facts and circumstances connected with the transaction. *See Wills v. Whitlock*, 139 S.W.3d 643, 653–54 (Mo.App.2004). In Husband's testimony, he denied that it was his intention to make a gift to Wife when Rosemont purchased the Missouri farm. Wife provided no contrary testimony. The trial court ruled that issue in favor of Husband, and we defer to this factual determination on appeal. *In re Marriage of Harris*, 154 S.W.3d 456, 457 (Mo.App.2005). "The trial court is in a better position than us to judge factors such as credibility, sincerity, character of the witnesses, and other intangibles which are not revealed in a trial transcript." *McAllister*, 101 S.W.3d at 291.

Second, Wife cites *In re Marriage of Smith*, 785 S.W.2d 764 (Mo.App.1990), and *Kramer v. Kramer*, 709 S.W.2d 157 (Mo.App.1986), to support her argument that

the act of titling the Missouri farm in Rosemont's name manifested a dispositive intent by Husband to donate the real estate to the marriage. Neither case is on point. In *Smith*, the husband directly vested his wife with title to the real estate at issue by having the deed to husband's house placed in both parties' names. *Smith*, 785 S.W.2d at 766. In *Kramer*, a promissory note was made jointly payable to husband and wife. *Kramer*, 709 S.W.2d at 158–59. Here, in contrast, title to the Missouri farm was held by a corporation in which Wife had no ownership interest. The act of titling the Missouri farm in Rosemont's name is entirely dissimilar to placing property in the joint names of a married couple. Accordingly, the trial court was not compelled to ignore Husband's testimony on the issue of his intent and find that a transmutation had occurred. *See Comninellis v. Comninellis*, 99 S.W.3d 502, 507 (Mo.App.2003) (noting that the trial court's conclusion that a house was nonmarital property was "reinforced by the fact that the house was titled in the corporation's name"). Based upon our review of the record, there is substantial evidence to support the trial court's finding that the Missouri farm was Husband's separate property.

Wife's argument that the judgment is against the weight of the evidence fares no better. "The 'weight of the evidence' refers to the probative value of the evidence and not the quantity of the evidence." *Comninellis*, 99 S.W.3d at 506. An appellate court exercises extreme caution in considering whether a judgment should be set aside on the ground that it is against the weight of the evidence and will do so only upon a firm belief that the judgment was wrong. *In re Marriage of Murphey*, 207 S.W.3d 679, 683 (Mo.App. 2006); *Comninellis*, 99 S.W.3d at 506. The trial court found that the Missouri

farm was nonmarital property. After reviewing the record, we do not have a firm belief that the court's finding was wrong. Therefore, the court did not abuse its discretion by awarding the Missouri farm to Husband as his separate property. Wife's first point is denied.

■■■ In Wife's second point, she contends the trial court's decision to deny her maintenance is unsupported by the evidence and is against the weight of the evidence. "[T]he trial court has broad discretion in determining whether or not to award maintenance." *Youngberg v. Youngberg,* 194 S.W.3d 886, 893 (Mo.App. 2006). "An abuse of discretion occurs only if the decree is so arbitrary or unreasonable that it indicates indifference and lack of proper judicial consideration." *In re Marriage of Woodson,* 92 S.W.3d 780, 785 (Mo. banc 2003).

■■■ Wife claims that she met the two-prong test under § 452.335 and was unable to meet her reasonable needs because of her advanced age, health problems and lack of educational training. Section 452.335 authorizes the trial court to grant maintenance only if it finds that the spouse seeking maintenance:

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

§ 452.335.1. In determining whether to grant maintenance, the court must consider the reasonable needs of the spouse seeking maintenance and then decide whether the spouse is able to meet those needs "through use of marital property or appropriate employment." *Breihan v.*

*Breihan,* 73 S.W.3d 771, 774 (Mo.App. 2002); *Youngberg,* 194 S.W.3d at 893. It was Wife's burden to prove that she met the threshold requirements necessary to receive a maintenance award. *In re Marriage of Richardson,* 204 S.W.3d 382, 384 (Mo.App.2006).

■■■ The trial court found that Wife "is able to meet her reasonable needs through appropriate employment and by marital property awarded to her." At the time of trial, Wife's monthly expenses were $1,300 per month. She worked approximately 30 hours per week as a cashier at a fruit farm in Ohio, and her net income was approximately $900 per month. The $400 difference between Wife's expenses and her income was more than offset by the fact that the trial court awarded her two income-producing properties capable of providing her with additional $675 per month in income. Furthermore, "[a] divorcing spouse has an affirmative duty to seek full-time employment after the divorce." *Breihan,* 73 S.W.3d at 775; *Shelton v. Shelton,* 29 S.W.3d 400, 404 (Mo.App.2000). Wife did not have a full-time job. The trial court apparently did not believe Wife's testimony that her physical ailments precluded her working more. Wife's argument that she is unable to meet her reasonable needs ignores the income-producing potential of the property awarded to her and her ability to increase her earnings by obtaining full-time employment.

Based upon our review of the record, the trial court's finding that Wife is able to meet her reasonable needs through a combination of appropriate employment and the marital property awarded to her is supported by substantial evidence. Furthermore, the judgment is not against the weight of the evidence because we do not hold the firm belief that the trial court's decision on this issue was wrong. *See In re Marriage of Murphey,* 207 S.W.3d 679,

683 (Mo.App.2006). Therefore, the court did not abuse its discretion in denying Wife's request for maintenance. Wife's second point is denied.

The judgment of the trial court is affirmed.

GARRISON and BARNEY, JJ. concur.