In re the MARRIAGE OF Melanie D.
FISHER and Robert M. Fisher

Melanie D. Fisher, Petitioner–
Respondent,

and

Robert M. Fisher, Respondent–
Appellant.

No. 28219.

Missouri Court of Appeals,
Southern District,
Division Two.

June 2, 2008.

Motion for Rehearing and Transfer
Denied June 24, 2008.

Application for Transfer Denied
Aug. 26, 2008.

Edward C. Clausen and Anne E. Kern, Carson & Coil, P.C., Jefferson City, MO, for Appellant.

Catherine L. Lange and Stephen K. Paulus, Lange, Paulus, Howald & Smith, Cuba, MO, for Respondent.

GARY W. LYNCH, Chief Judge.

Robert M. Fisher ("Husband") appeals from the judgment of the trial court dissolving his marriage to Melanie Fisher ("Wife"). Husband contends the trial court erred in classifying 9,600 shares of stock in Fisher Trucking & Lumber Co., Inc. ("Fisher Trucking") as marital property, because the shares were titled in his name only and were a gift from his father. Husband further contends that the trial court erred in valuing a time share and some life insurance policies owned by the parties. We affirm.

### Factual and Procedural Background

Husband and Wife married in July of 1993. At that time and throughout the parties' marriage, Husband worked at Fisher Trucking, a company initially started and owned by his father. Shortly before the parties married, Husband's father transferred to Husband and Husband's brother and sister individual sixteen-percent ownership interests in the company, each consisting of 4,800 shares of stock.

In 1994, the brother and sister transferred their combined thirty-two-percent interest, or 9,600 shares of stock, back to their father because they wanted out of the trucking business. Their father retired in 2002 and at that time assigned that thirty-two-percent interest, or 9,600 shares of stock, to Husband, resulting in Husband owning forty-eight percent of the company, or 14,400 shares, and his father owning fifty-two percent, or 15,600 shares.

Husband and Wife separated in August of 2004. For the entirety of the marriage prior to the separation, Wife was a stay-at-home mother, caring full time for the parties' two children. She also occasionally worked at Fisher Trucking doing dispatching. Husband handled all of the family's finances and expenditures and did not discuss any of it with Wife. Following the separation, Wife, who has no formal education beyond high school, began working as a waitress and bartender and eventually obtained full-time employment as a patient relations coordinator for a chiropractor's office.

Wife filed her petition for dissolution in October of 2004. Each party filed a property statement and an income and expense statement in February of 2006. Husband's statements contained the following certification:

> I certify under penalty of perjury that the above statement is complete, true and accurate to the best of my knowledge and belief. I am aware of the criminal penalties for perjury and false affidavit under RSMo. [section] 575.040, [section] 575.050 and [section] 575.060, which provide for imprisonment for up to five years and a fine up to $5,000.

Wife certified in her property statement under oath that "the facts stated herein are true according to [Wife's] best knowledge, information and belief and that [Wife] executed the same as her own free act and deed." Wife certified in her income and expense statement under oath that "the foregoing answers and statements are accurate."

The property statements included real estate, motor vehicles, bank accounts, life insurance policies, various household items, and debts owed by the parties. Husband's statement designated his 14,400 shares of stock in Fisher Trucking as non-marital property "acquired by gift before marriage." He did not state a value for the shares of stock. Wife's statement classified the shares of stock as marital property and valued them at one million dollars with debt and equity unknown. Wife's statement also included a time share in Las Vegas as marital property, whereas Husband's statement did not mention the time share at all. Wife valued the time share at $25,000 with $10,000 in debt and $15,000 in equity. On her income and expense statement, Wife listed the time share as an asset with a value of $18,000. Both parties listed life insurance policies as marital property. Wife listed five different policies, with exact values for each unknown. Husband did not state how many policies there were; he merely stated that the death benefit on them was $400,000 with $74,000 in debt and $75,000 in equity.

Six months later, and four days before trial, Husband filed an amended property statement and an amended income and expense statement. These statements contained a certification by Husband identical to that in his originally filed statements. His amended property statement listed the Las Vegas time share as marital property, valued at $18,000 with $18,000 in debt and $0 in equity. He listed the life insurance policies as having a death benefit of $400,000 with $74,000 in debt and $0 in equity.

At trial, Wife testified regarding the Las Vegas time share. She explained that the $18,000 value from her income and expense statement represented the purchase price. Although she believed the time share had increased in value to $25,000 as listed in her property statement, she was willing to accept Husband's $18,000 value "for the sake of argument." She did not concede, however, that there was an outstanding debt of $18,000 against the time share, as listed in Husband's amended property statement.

Husband testified with regard to the insurance policies. He stated that he borrowed $70,000 to $74,000 against the policies in 2002, to put in a furnace, swimming pool, hot tub, pool house, and concrete wall, and that there was currently zero equity in the policies.

Following a two-day trial in August 2006, the trial court entered its judgment of dissolution in November 2006. The court found that Husband's 9,600 shares of stock in Fisher Trucking, which he acquired after the marriage, were marital property, and awarded Wife a marital interest in those shares. The remaining 4,800 shares, which Husband acquired before the marriage, were classified as nonmarital property and set aside to Husband. The court also found that the Las Vegas time share was marital property valued at $25,000 with no debt against it, and awarded it to Husband. The court found that the life insurance policies had a net cash value of $75,000, to be divided between the parties. In total, Husband was awarded marital property in the amount of $531,684.00 and assigned $37,000.00 in marital debt. Wife was awarded marital property in the amount of $262,300.00 and assigned $80,600.00 in marital debt. The court ordered Husband to pay Wife $118,922.00 in order to "equalize the equi-

ties." Consequently, Husband received 53.5 percent of the net marital assets, and Wife received 46.5 percent of the net marital assets.

### Standard of Review

"In a dissolution proceeding, this Court must affirm the trial court's decree of dissolution unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law." *Holman v. Holman,* 228 S.W.3d 628, 631 (Mo.App.2007). The evidence and all permissible inferences from the evidence are reviewed in the light most favorable to the trial court's decision. *Elrod v. Elrod,* 192 S.W.3d 738, 740 (Mo.App.2006). "On appeal, we defer to the trial court's credibility determinations and the weight assigned to witness testimony." *In re Marriage of Dolence,* 231 S.W.3d 331, 333–34 (Mo.App. 2007). "The trial court is free to believe all, none, or part of the testimony of any witness." *Id.* "[T]he party challenging the dissolution decree has the burden of demonstrating error." *Elrod,* 192 S.W.3d at 740.

### Discussion

Husband brings three points on appeal. We address them in the order presented.

### Assignment of Stock was Properly Classified as Marital Property

In his first point, Husband contends the trial court erred in classifying 9,600 shares of stock in Fisher Trucking as marital property, because the stock was a gift from his father and therefore was "excluded" as marital property under section 452.330.4.[1] Husband asserts that the classification was not supported by sub-

---

1. All references to statutes are to RSMo 2000.

stantial evidence, was against the weight of the evidence, and erroneously applied the law.

■ We initially note that Husband failed to make any argument in his brief in support of his assertion in his point that the marital classification of this stock was against the weight of the evidence. "Arguments raised in the points relied on which are not supported by argument in the argument portion of the brief are deemed abandoned and present nothing for appellate review." *State ex rel. Greene County v. Barnett,* 231 S.W.3d 854, 858 (Mo.App.2007) (*quoting Luft v. Schoenhoff,* 935 S.W.2d 685, 687 (Mo.App.1996)). Thus, we now turn to Husband's remaining assertions.

■ Pursuant to section 452.330, in a dissolution proceeding, the trial court must set aside to each spouse his or her non-marital property, and divide the marital property and debts between them in proportions that the court deems just. Marital property is "all property acquired by either spouse subsequent to the marriage," with some exceptions, including "[p]roperty acquired by gift, bequest, devise, or descent[.]" Section 452.330.2(1). Furthermore, there is a statutory presumption that all property acquired by either spouse subsequent to the marriage is marital property. Section 452.330.3. The party challenging the trial court's classification of property acquired subsequent to the marriage as marital carries the burden of overcoming that presumption by clear and convincing evidence showing that the property meets one of the statutory exceptions. *Holman,* 228 S.W.3d at 635–36; *Dolence,* 231 S.W.3d at 336–37; *Dunnagan v. Dunnagan,* 239 S.W.3d 181, 187 (Mo.App.2007).

■ In this case, Husband claims the assignment to him of 9,600 shares of his father's stock in Fisher Trucking is non-marital property because it was a gift to him from his father. The trial court found that this assignment occurred on May 6, 2002, after the date of the parties' marriage. Husband does not challenge this finding. Therefore, the stock assignment is presumed to be marital property, section 452.330.3, and Husband had the burden of overcoming that presumption by clear and convincing evidence showing that the assignment was a gift, *Holman,* 228 S.W.3d at 635–36; *Dolence,* 231 S.W.3d at 336–37; *Dunnagan,* 239 S.W.3d at 187.

■ While the classification of property as marital or non-marital is a question of law, *In re Marriage of Below,* 8 S.W.3d 233, 235 (Mo.App.1999), "[w]hether or not there is a valid inter vivos gift is a question of fact[,]" *McDonough v. McDonough,* 762 S.W.2d 827, 829 (Mo.App.1988) (citing *Cochenour v. Cochenour,* 642 S.W.2d 402 (Mo.App.1982)). So, before we can consider whether the trial court misapplied the law in classifying the stock assignment as marital property, we must first consider whether Husband carried his burden of persuading the trial court as the finder of fact that the stock assignment was a gift.

■ Husband offered stock certificate number five into evidence, which was admitted by the trial court. It states on the front side that 9,600 shares of stock in Fisher Trucking are owned by Husband's father. On the reverse side, an assignment reads: "For Value Received, I hereby sell, assign and transfer unto Robert M. Fisher Ninety Six Hundred Shares represented by the within Certificate. . . . Dated 5/6 2002." There is no indication from the stock certificate that the assignment was a gift other than, as pointed out by Husband, it was made solely in his name. However, that fact standing alone does not assist Husband in rebutting the presumption, because the statutory presumption of marital property applies to any property acquired

by either spouse subsequent to marriage, even if it is held individually. Section 452.330.3; *Dolence,* 231 S.W.3d at 337.

Wife argues that the explicit language used in the assignment of stock certificate number five—"for value received"—directly refutes Husband's contention that the assignment was a gift. Husband responds by stating in his reply brief: "This logic is unreasonable as the language on the certificate is standard language and not intended to imply the nature of the transfer." Husband fails, however, to cite any authority supporting this assertion. Husband's offer of stock certificate number five with the written assignment to him into evidence acknowledges that the certificate is competent evidence to prove the existence of the assignment. It is now disingenuous of Husband to argue that the same language that proves the existence of the assignment is not competent evidence from which the trial court could consider the nature and character of the assignment. Husband's argument is properly directed to the weight and credibility the trial court should afford the language used in the assignment, not to its competency. That weight and credibility determination by the trial court must be made within the context of the totality of the evidence adduced at trial including the testimony given by the parties. The trial court is in the best position to judge the credibility, sincerity, and character of the witnesses and to decide the weight to give to their testimony, and we must defer to that decision. *Dolence,* 231 S.W.3d at 333–34, 338.

Here, the trial court was confronted with conflicting evidence from both parties as to the nature and character of the stock assignment. In his original property statement, which was admitted into evidence at trial, Husband stated, under penalty of perjury, that all Fisher Trucking stock was "acquired by gift *before* marriage." (Emphasis added.) Husband reiterated this same information, again under penalty of perjury, in his amended property statement filed just a few days before trial, which was also admitted into evidence at trial. Yet, the assignment of stock certificate number five specifically states that the assignment of the 9,600 shares to Husband occurred on May 6, 2002, which is after the date of the marriage, not before the marriage, as stated by Husband. Both Husband and his father conceded at trial that the transfer occurred on the specific date as shown on the assignment. Husband and his father both testified to the conclusions that no value was given for the assignment of stock certificate number five by father to Husband and that it was a gift. Yet, as previously noted, the assignment on the stock certificate, as offered and admitted into evidence by Husband, specifically recited that it was a sale by father to Husband for "value received."

In evaluating the credibility and weight to afford Husband's and his father's testimony as to this assignment, it was well within the trial court's discretion to consider their close familial and business relationship and the fact that Husband and his father together, as the only shareholders in the company, had total control over all of the financial records of Fisher Trucking. Yet, neither chose to provide any documentary evidence other than the assignment on the back of stock certificate number five to support their testimony that the assignment was a gift for no value received.

Also, the trial court could have considered the omission of any testimonial or documentary evidence from Husband's father as to his filing of a Federal Gift Tax return reporting the gift or why such a return was not required.

In addition, the trial court specifically found that Husband, without any good reason, failed to provide the company's accountant with the necessary documentation to file the 2004 and 2005 income tax returns for Fisher Trucking in "a deliberate attempt on his part to conceal his actual earnings." The trial court could have considered this intentional concealment of financial matters, along with the fact that Husband had also failed to file any personal income tax returns for 2004 and 2005, in determining the credibility of Husband's testimony as to the financial details surrounding the assignment of the stock at issue. This is especially so, given that Husband handled all of the parties' financial affairs during the marriage without any discussion with Wife. As such, Husband apparently had access to all of the parties' financial records and chose not to provide any documentary evidence to support his and his father's conclusory testimony or offer an explanation why such evidence was not available to him.

Finally, the trial court could have considered Husband's admitted lack of candor with Wife when he conceded at trial that he had told Wife in 2003 that he had purchased all of his father's interest in the company, while by the time of trial, he testified that the transaction had fallen through and did not occur because he could not get the necessary financial back-

ing. The trial court was not required to believe either Husband's or his father's testimony. *Heineman v. Heineman,* 768 S.W.2d 130, 140 (Mo.App.1989).

Wife swore under oath in her property statement, which was admitted into evidence at trial with no objection by Husband, that the real estate owned by Fisher Trucking, the tractors and trailers owned by Fisher Trucking, and the stock owned by the parties in Fisher Trucking were all marital property. Yet at trial, Wife testified that the assignment of 9,600 shares of stock was a gift to Husband and that if Husband's father said it was a gift, he would not be lying. Wife now qualifies these portions of her trial testimony by asserting that she was confused as to which Fisher Trucking stock transfer was being referenced—the original transfer of 4,800 shares to Husband, which unquestionably occurred before the parties' marriage and was a gift, or the later assignment after the parties' marriage, which gave Husband a forty-eight percent ownership interest in the company.[2] Husband claims that Wife was not confused because: "The record does not support this. The shares of stocks were clearly identified and described in both the questions by [Husband's] attorney and the responses from [Wife]."[3] Regardless, the issue of whether or not Wife was confused as to which stock transaction was being referenced was a

**2.** The various Fisher Trucking stock transactions in the evidence at trial included: (1) the transfer of 4,800 shares to Husband before the parties' marriage; (2) the transfer of 9,600 shares to Husband's brother and sister before the parties' marriage; (3) the transfer in 1994 of 9,600 shares from Husband's brother and sister to Husband's father; (4) the purchase of all of Husband's father's interest in the company by Husband in 2003, after the date of the parties' marriage, which Husband initially told Wife had occurred, but he testified at trial had fallen through and did not occur, because he could not get the necessary financial backing; and (5) the assign-

ment of stock certificate number five for 9,600 shares to Husband after Husband's marriage to Wife, which when added to his original 4,800 shares gave Husband ownership of forty-eight percent of the issued and outstanding shares in the company.

**3.** Husband concludes this argument in his reply brief by stating: "The 9,200 [sic] shares of stock were a gift." Husband must be confused, as we can find no evidence in the record relating to a stock transaction involving 9,200 shares.

determination well within the discretion of the trial court in evaluating the credibility and weight to be given her testimony, which we will not disturb. *Dolence,* 231 S.W.3d at 333–34, 338.

With such conflicting and conclusory testimony from the parties, it was well within the trial court's discretion to disregard that testimony and to give more weight and credibility to the actual language of the assignment, which was the only documentary evidence before the court as to the nature and character of this transaction.

Husband relies upon *In re Marriage of Johnson,* 856 S.W.2d 921 (Mo.App.1993), for his contention that the trial court erroneously applied the law in finding the stock was marital property. In *Johnson,* we reversed the judgment of the trial court which found the husband's 142 shares of stock in the company for which he worked, and acquired after the date of the marriage, were marital property. 856 S.W.2d at 927. The trial court's conclusion relied on the testimony of Frank Ellis, one of the company's owners, that he had transferred some stock to the husband as compensation for his hard work for the company. *Id.* at 925. We found that a review of the transcript demonstrated that Ellis did not so testify and, in fact, his testimony contradicted the trial court's conclusion, because he clearly testified he personally gave the husband some shares of stock as a gift on an annual basis, because he liked the husband and the husband was like family. *Id.* at 925–26. We concluded that, based upon all of the evidence in the record as a matter of law, husband had rebutted the marital presumption by clear and convincing evidence as to 31.6 shares of stock out of the 142 shares acquired during the marriage. *Id.* at 927. We supported this conclusion, based upon four factors: (1) the uncontra-

dicted evidence of Frank Ellis and Scott Roberts, the accountant for the company and the donors; (2) the shares were fully transferred on the corporate records and new certificates were issued thereby completing the gifts; (3) the absence of any evidence that the shares were compensation or a bonus; and (4) Ellis' and Roberts' testimony consisted of "more than conclusory statements[.]" *Id.* at 926–27. These four factors do not exist in the case at bar.

First, while the testimony of Ellis and Roberts was uncontradicted in *Johnson,* the testimonial evidence of a gift in the instant case was contradicted by the explicit language of the stock assignment. Second, no evidence in the record here supports that the shares of stock assigned to Husband were fully transferred by proper notation in the corporate records and the issuance of a stock certificate to Husband, as was done in *Johnson.* Third, while there was no evidence in *Johnson* that the shares were for compensation or a bonus, here the stock assignment explicitly states that the shares are assigned to Husband for value received, at a time when Husband was an officer and employee of the company. Fourth, and probably the most significant factor, is that the testimony of gift in *Johnson* was supported by specific reference to supporting factual circumstances and documentation, while all of the evidence of gift here is the conclusory testimony of the parties and Husband's father. This last factor bears closer examination.

In *Johnson,* we summarized Roberts' uncontradicted testimony as follows:

Scott Roberts, who had been an accountant for Springfield Brake since 1978 and who also had prepared individual tax returns for Frank and John Ellis, testified concerning the gifts of corporate stock given to Johnny by the Ellises. The Ellis brothers told Roberts

they wanted to give Johnny shares of stock, but they limited the amount of such gifts to stay within the annual Internal Revenue Code gift tax exclusion. Stock transfers to Johnny began in 1985 and continued through 1991.

The number of shares transferred by the Ellis brothers each year was obtained by completing an annual evaluation of the Springfield Brake stock, using a formula in the shareholder's buy-sell agreement. The per share value derived from the formula was then divided into the annual gift tax exclusion. The resulting number of shares was transferred to Johnny.

By examining the annual personal income tax returns of Frank and John Ellis and by examining the corporate records of stock transfers, Roberts determined that between July 1, 1985, and June 30, 1991, the Ellis brothers had given Johnny 31.6 shares of stock.

*Id.* at 923–24. In the case at bar, as noted in more detail previously, neither Husband nor his father supported their conclusory statements of gift with any reference to company records or tax returns, personal records or tax returns, or documentation related to Federal Gift Tax liability. Moreover, the evidence supported, as the trial court specifically found, that Husband had purposefully failed to share with the company's accountant the necessary records to even prepare overdue tax returns in order to conceal his financial position.

Thus, *Johnson* is distinguishable from the instant case and provides Husband no relief. Accordingly, we can not say as a matter of law that Husband has overcome the marital property presumption in section 452.330.3 by clear and convincing evidence. Without such rebuttal, the trial court properly applied the statutory presumption and, as a statutory mandate, such application does not require any evidentiary support other than substantial evidence supporting that the date of acquisition was subsequent to the parties' marriage. Section 452.330.3. Point I is denied.

### Valuation of Time Share and Life Insurance is Supported by Substantial Evidence

In his remaining points on appeal, Husband contends the trial court erred in valuing the Las Vegas time share (Point II) and the insurance policies (Point III) because the values the court assigned were not supported by the evidence. Because these points involve the same analysis, we will consider them together.

"[M]eaningful review of the division of marital property requires evidence from which a fair and accurate valuation can be made." *Travis v. Travis,* 163 S.W.3d 43, 47 (Mo.App.2005). "[T]he trial court is entitled to believe or disbelieve the testimony of either party concerning the valuation of marital property in a dissolution proceeding." *Dunnagan,* 239 S.W.3d at 186. "[W]hen there is conflicting evidence regarding valuation of property, this Court defers to the trial court's resolution of the conflict." *Vinson v. Vinson,* 243 S.W.3d 418, 424 (Mo.App.2007). "When the trial court's valuation of property is within the range of conflicting evidence of value offered at trial, the court acts within its discretion to resolve conflicts in evidence." *Dowell v. Dowell,* 203 S.W.3d 271, 276–77 (Mo.App.2006).

### Valuation of Time Share

With regard to the Las Vegas time share, the trial court found that the time share was marital property valued at $25,000 with no debt against it, and awarded it to Husband. Husband argues this conclusion is not supported by the evidence, because the court failed to assign

the amount of debt to the property that was supported by the evidence and failed to assign the pre-debt valuation of the property which was allegedly stipulated to by the parties.

The evidence shows that Husband, under penalty of perjury for completeness, failed to include the time share or any debt against the time share on his original property and expense statements. On her property statement, Wife valued the time share at $25,000, with $10,000 in debt and $15,000 in equity. On her income and expense statement, Wife valued the property at $18,000, which she later testified represented the purchase price of the time share. Wife's property and income statements were admitted into evidence at the hearing, without objection. Husband's amended property statement, filed four days before the hearing, valued the time share at $18,000 and reported a debt of $18,000. His amended income statement, filed on the same date as his amended property statement, did not report a debt or a debt payment on the time share. At trial, Wife testified she believed the value of the time share had increased to $25,000, although she would be willing to accept the $18,000 value "for the sake of argument." Wife did not concede that there was an outstanding debt of $18,000 against the time share. She testified that she assumed Husband borrowed the full $18,000 purchase price, but she did not know if he had made any payments because Husband handled all of the family's finances. Neither party presented any documentation, such as payment records, a promissory note, or a deed of trust, from which the court could determine the existence of a

debt or encumbrance or determine an outstanding balance on that debt, if any.

Consequently, the range of conflicting evidence of the time share's value that the court had to consider was $18,000 to $25,000. The court's valuation of the time share at $25,000 was within that range of evidence. *Dowell*, 203 S.W.3d at 276–77.[4] There was not any clear evidence of debt, in that Husband did not even report the time share in his initial property statement, but later reported a debt of $18,000, and Wife did not know what outstanding debt there was because Husband was in control of the family's finances. The trial court was free to disbelieve Husband's conclusory testimony regarding the debt, especially without any supporting documentation when he was in control of the finances, *Dunnagan*, 239 S.W.3d at 186, and, as previously discussed, had intentionally tried to conceal financial matters. Accordingly, we defer to the trial court's resolution finding no outstanding debt, *Vinson*, 243 S.W.3d at 424. We find that the trial court's valuation of the Las Vegas time share at $25,000 with no outstanding debt is supported by the evidence. Point II is denied.

### Valuation of Life Insurance

■ With regard to the life insurance policies, the trial court found that the policies had a net cash value of $75,000 and awarded the policies to Husband. Husband argues the valuation made by the trial court was not supported by the evidence, because both parties presented evidence that there was no equity in the policies.

4. Husband likens the instant case to *Williams v. Williams*, 716 S.W.2d 13 (Mo.App.1986), where this court found the trial court's valuation of the property at $2,000 was not supported by the evidence because the parties offered conflicting evidence of $1,500 value and $1,400 value. The instant case is distinguishable, because unlike in *Williams,* the value assigned by the trial court was within the range of conflicting values provided by the parties.

The evidence shows that Husband's initial property statement, submitted by him under penalty of perjury, reported "Northwest Mutual Life Policies" with a death benefit of $400,000, a debt of $74,000 and equity of $75,000. Wife reported in her property statement four separate policies in Husband's name, with one having a death benefit of $300,000 and the death benefits on the others unknown. She listed a $31,015 debt on one policy, a $32,315 debt on another policy, and the debt on the rest unknown. She listed one policy as having equity of $8,814.23 and the equity on the rest of the policies unknown. Wife also reported a policy in her name, with a death benefit of $200,000, but stated that it was cancelled by Husband after the parties separated. In his amended property statement, again under penalty of perjury, Husband reduced the reported equity in the policies to $0. Husband, however, did not report a debt or any debt payments owing on the insurance policies in either his original or his amended income and expense statements.

At the hearing, Husband testified that the life insurance premiums are paid by the trucking company. He testified that the equity value he provided on his original property statement was a mistake. He testified that although at one point in time, the policies had a cash value, the parties borrowed $70,000 against the policies in 2002 to put in a swimming pool, hot tub, pool house, and concrete wall, and that the policies no longer had any cash value. No documentation regarding the life insurance policies or any loans taken out against the policies was offered by either party. Wife testified that she had no other information pertaining to the equity in the life insurance policies, because Husband handled all of the finances throughout the marriage.

Husband asserts that *Morse v. Morse,* 80 S.W.3d 898 (Mo.App.2002), supports his argument that the trial court erred in ignoring the evidence of debt presented at trial and using the $75,000 equity value Husband reported on his initial property statement six months before trial. In *Morse,* the husband reported in his property statement six months before trial that a vehicle had a net value of $12,000. 80 S.W.3d at 905. The only evidence of the vehicle's value at the time of trial was husband's testimony that the value of the vehicle was $7,000. *Id.* We reversed the trial court's finding that the vehicle was worth $12,000, because that value was not supported by the evidence at the time of trial. *Id.* Here, however, the trial court had evidence presented from both parties at the time of trial. Husband's original and amended property statements and income statements were admitted into evidence, as were Wife's statements. Husband and Wife offered conflicting testimony at trial as well. The trial court has broad discretion in weighing all of the evidence, and in deciding the credibility of the witnesses. *Dunnagan,* 239 S.W.3d at 186. The court was free to disbelieve Husband's testimony that the $75,000 equity value from his original property statement was a mistake, and that he borrowed $70,000 against the policies. *Id.* Husband, as the one in charge of the couple's finances, did not provide any documentation to support his testimony or offer any explanation for why he could not provide such documentation. Wife testified Husband controlled all of the finances, and it appears she was at a disadvantage with providing the court with relevant information or documentation. Therefore, the range of evidence that the trial court had to consider included the $75,000 equity value with no clear evidence of the amount of cash value or the amount of debt, if any, against that cash value. Accordingly, we defer to the trial court's resolution of the conflict-

ing evidence and find that the trial court's valuation of the life insurance policies at $75,000 was supported by the evidence. *Vinson,* 243 S.W.3d at 424. Point III is denied.

### *Decision*

The judgment of the trial court is affirmed.

BARNEY, J., and RAHMEYER, J., concur.